Sheila MELE, Plaintiff–Appellant,

v.

SHERMAN HOSPITAL,
Defendant–Appellee.

No. 86–2309.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 16, 1987.

Decided Jan. 25, 1988.

Paul W. Grauer, Paul W. Grauer & Assoc., Schaumburg, Ill., for plaintiff-appellant.

Kathryn A. Spalding, Hinshaw, Culbertson, Moelman, Hoban & Fuller, Chicago, Ill., for defendant-appellee.

Before COFFEY, RIPPLE and MANION, Circuit Judges.

MANION, Circuit Judge.

In this diversity action, a former patient sued a hospital for medical malpractice. The district court granted the hospital's motion for a directed verdict. The patient appeals. We affirm.

## I. NATURE OF THE CASE

Plaintiff Sheila Mele (Mele), desiring to have her tubes tied (a "tubal ligation"), entered Sherman Hospital (the Hospital) in Elgin, Illinois, for a laparoscopy and tubal ligation to be performed by Dr. Jae Han. In a laparoscopy, a surgeon makes a tiny incision into the patient's navel and then inserts a light into her abdomen. After inflating the abdomen with gas, the surgeon locates and cuts the tubes. In a laparotomy, in comparison, a surgeon opens the patient's abdomen with an incision.

The Hospital did not employ Dr. Han. Rather, as an independent physician with Hospital staff privileges, Dr. Han could admit his patient into the Hospital and treat the patient there when his patient required those facilities.

The Hospital's bylaws provide that "a surgical operation will be performed only on consent of the patient ..., except in emergencies." After admission, Mele signed a form captioned "authorization for medical and surgical treatment." This form had been prepared by the Hospital and bore the Hospital's name on top. The

form left blank spaces for the treating physician to fill in the patient's name, his own name, and the treatment the patient has authorized. The form's remainder featured preprinted provisions. One preprinted provision authorized the treating physician to employ additional procedures if unforeseen conditions should arise during surgery. Another set forth general risks from surgery, such as death and blood loss. The form also required a patient to acknowledge that her doctor had informed her of alternative treatments.

The Hospital distributed this form to independent doctors with staff privileges. The parties do not mention and the record on appeal does not readily reveal whether the Hospital distributed this form to doctors on its full-time staff—or even whether it employed such doctors—or whether independent doctors were *required* to use this particular form.

By signing the consent form, Mele authorized Dr. Han to perform a "laparoscopic tubal coagulation." A nurse had filled in that procedure as directed by Dr. Han. The consent form did not mention a laparotomy. Mele testified that Dr. Han did not tell her about the surgery's risks. Dr. Han testified that he informed Mele of some risks, but did not tell her about the possibility of nicking a membrane in her abdomen because he believed the chance of that complication arising was slight.

During the operation, Dr. Han nicked a membrane inside Mele's abdomen. While Dr. Han did not realize he had done this, he did notice bleeding in her abdomen. He consequently performed a laparotomy to discover the bleeding's source. Upon determining that her bleeding had stopped, and apparently without performing any further remedial surgery, Dr. Han finished cutting Mele's tubes and sutured the incision in her abdomen. As a result of the laparotomy, Mele has a scar on her abdomen.

## II.  NATURE OF THE PROCEEDINGS

Mele, a California citizen, first sued Dr. Han in the United States District Court for the Northern District of Illinois. *Mele v.* *Han,* No. 82 C 4302 (N.D.Ill.1983). Mele alleged that Dr. Han negligently performed the tubal ligation and negligently failed to obtain her informed consent. A jury returned a verdict for Dr. Han.

Immediately after that verdict, Mele sued the Hospital. Mele alleged that the Hospital negligently failed to obtain her informed consent. (At one point, the Hospital unsuccessfully moved for summary judgment on grounds that Mele's prior lawsuit precluded suit here. We do not consider now whether the district court correctly denied that motion.) After Mele closed her case-in-chief, the district court granted the Hospital's motion for a directed verdict pursuant to Fed.R.Civ.P. 50(a). Mele timely appealed.

## III.  JURISDICTION

Jurisdiction below was properly invoked pursuant to 28 U.S.C. § 1332 [diversity of citizenship]. Jurisdiction on appeal exists pursuant to 28 U.S.C. § 1291.

## IV.  ANALYSIS

### A.  Standard of Review

"In diversity cases, this court applies the state standard of review to the trial court's decision to grant or deny a directed verdict." *Cincinnati Ins. Co. v. City of Taylorville,* 818 F.2d 1345, 1348 (7th Cir.1987). The parties agree that the applicable Illinois directed verdict standard is that set forth in *Pedrick v. Peoria & Eastern R.R. Co.,* 37 Ill.2d 494, 510, 229 N.E.2d 504, 513–14 (1967). There, the Illinois Supreme Court stated that "verdicts ought to be directed ... only in those cases in which all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand." *Pedrick, quoted with approval in Cincinnati Ins. Co., supra,* 818 F.2d at 1348. *Accord Steinberg v. Petta,* 114 Ill.2d 496, 103 Ill.Dec. 725, 729, 501 N.E.2d 1263, 1267 (1986).

"Application of the *Pedrick* standard to medical malpractice cases requires the re-

viewing court to scrutinize the evidence submitted by the plaintiff in support of its case. In such cases, the plaintiff must establish the standard of care the hospital was required to meet, demonstrate a deviation from that standard, and indicate how the deviation resulted in harm to the plaintiff." *Mielke v. Condell Memorial Hosp.*, 124 Ill.App.3d 42, 79 Ill.Dec. 78, 84, 463 N.E.2d 216, 222 (1984) (citations omitted).

## B. The Hospital's Standard of Care

■ Mele did not establish that the standard of care the Hospital had to meet included warning a patient of possible bad results from surgery to be performed by an independent treating physician. At most, she established that the standard of care included requiring such a physician to warn his patients of the risks of surgery.

"It is established that a hospital's duty to its patients requires it to conform to the legal standard of reasonable conduct in light of the apparent risk.... The standard of care to which a hospital must adhere in order to meet its duty is a factual question capable of proof through a wide variety of evidence including expert testimony, hospital bylaws, statutes, accreditation standards, customs and community practice." *Magana v. Elie*, 108 Ill.App.3d 1028, 64 Ill.Dec. 511, 513, 439 N.E.2d 1319, 1321 (1982) (citations omitted). We agree with the district court that the Hospital's bylaw—which allows surgery only with a patient's informed consent—does not obligate the Hospital to guarantee that a patient has tendered informed consent. The bylaw, which binds independent doctors, is the Hospital's directive to doctors that there be informed consent, not an undertaking by the Hospital to insure that each patient is informed properly. As the district court correctly stated from the bench,

> The bylaw does not say that the hospital has a duty to inform patients about risks. It says nothing of the sort. It is hard for me to believe that a reasonable jury could even find that the bylaw imposes, self-imposes on the hospital a duty to disclose risks or conditions of every particular surgery. As I said before, I don't

know how a hospital could assume such a duty.

We further agree with the district court that the preprinted consent form prepared by the Hospital—in which a patient must affirm that she has "been informed that there are risks"—also does not force the Hospital to guarantee that a doctor has fully informed his patient. Mele's expert witness, Dr. Hassan, testified that the filled-in form Mele signed was "incomplete" because it did not disclose the possibility of a laparotomy. That might have been useful to Mele in a suit against her doctor (which she lost). But Mele's expert candidly acknowledged that he did not believe that it was the Hospital's responsibility to place upon the form that Mele might need a laparotomy. Instead, he testified that it is the doctor's responsibility to inform a patient of surgical risks, and that is what he does in his practice. Cross-examination of Mele's expert produced the following typical exchange:

> Q[uestion]. You're not saying that Sherman Hospital should have put something on the form that the physician didn't put on or order, are you?
>
> A[nswer]. No, I can't say that.

In addition, Mele's expert stated that he did not know what forms Chicago hospitals used at the time.

The only standard of care derivable from Mele's evidence is that of putting in place a system to facilitate a doctor's obtaining consent. By enacting its bylaw and drafting a consent form, the Hospital sought to increase the likelihood that *doctors* would warn patients. Every doctor who used hospital facilities had to agree to abide by the Hospital's bylaws, and each patient was required to sign the consent form. Until the patient signed that form, surgery would be delayed or postponed. In addition, according to the Hospital president's unrebutted testimony, on the night before surgery the Hospital gives each patient a pamphlet which tells the patient that the physician is responsible for explaining the surgery and encourages the patient to ask questions. This pamphlet, when read with

the provision in the preprinted form certifying that the patient has been "informed of other alternative methods of treatment," reasonably spurs an interested patient to ask her doctor about comparative risks.

■ Finally, we agree with the district court that—assuming *arguendo* that the evidence established a standard of care to inform patients—Mele failed to prove that the Hospital negligently breached this standard. The Hospital informed Mele about possibly losing blood and obtained her consent to additional procedures to remedy unforeseen conditions. Mele's bleeding was unforeseen, and the laparotomy an indicated and authorized response.

Informed consent means "inform[ing] patients of the foreseeable risks and results of a given surgical procedure, and the reasonable alternatives to such procedure." *Weekly v. Solomon*, 156 Ill.App.3d 1011, 109 Ill.Dec. 531, 535, 510 N.E.2d 152, 156 (1987). While Dr. Hassan testified that he warns his patients about the "possibility" of a corrective laparotomy, nothing in his testimony suggested that not mentioning that possibility is a failure "to exercise discretion in prudently disclosing information in accordance with [the] patient's best interests. To disclose more than that which is material would run counter to the responsibility assumed through the doctor-patient relationship." *Tobias v. Winkler*, 156 Ill.App.3d 886, 109 Ill.Dec. 211, 216, 509 N.E.2d 1050, 1055 (1987) (quoting *Miceikis v. Field*, 37 Ill.App.3d 763, 768, 347 N.E.2d 320, 324 (1976)).

## V. CONCLUSION

Mele failed to prove two required elements of her case—the level of the Hospital's standard of care and that it breached that standard of care. Therefore, the district court properly directed a verdict in the Hospital's favor.

AFFIRMED.

RIPPLE, Circuit Judge, concurring.

I join the judgment of the court. I am also pleased to join that part of the court's opinion that holds that the defendant hospital was not obligated to guarantee that the patient had given informed consent.

Our conclusion that the hospital did not have the responsibility to procure such a consent ends the case. There is no need for us to add—gratuitously—that the advice that the hospital did give was, in any event, adequate. The constitutional underpinnings of *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938)—that the states, not the federal government, have the sole power to make law in those areas not specifically reserved to the federal government—counsel that the federal judiciary, when deciding cases based on diversity of citizenship, ought to refrain from intruding unnecessarily into the states' law-making process. As the cases cited by the majority indicate, Illinois has established the *general* principles of informed consent. It should be allowed to develop those principles on a case-by-case basis without unnecessary comment by federal judges. It is especially important that we be circumspect in this regard in this case. It involves a relatively new surgical technique. In my view, the question of what constitutes adequate disclosure in such a situation is a matter that deserves careful and thoughtful attention by *state* policymakers and *state* judges. While the Illinois courts are, of course, always free to ignore our views on what the law of Illinois is or should be, it would be unrealistic to assume that our decisions do not foster reliance until the Illinois courts do have the opportunity to rule. This intrusion ought to be avoided whenever it can; it can be avoided here. Therefore, I respectfully decline to join that part of the opinion that discusses this subject.