# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 98-4184

_____

| | | |
|---|---|---|
| C. Richard Brown, | * | |
| | * | |
| Plaintiff - Appellant, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Southern District of Iowa. |
| American Life Holdings, Inc., et al., | * | |
| | * | |
| Defendants - Appellees. | * | |

_____

Submitted:  May 12, 1999

Filed:  September 3, 1999

_____

Before LOKEN, HANSEN, and MORRIS SHEPPARD ARNOLD, Circuit Judges.

_____

LOKEN, Circuit Judge.

        C. Richard Brown was a participant in The Statesman Group, Inc. Employee Stock Ownership Plan (the "ESOP"), an ERISA plan sponsored by his former employer, American Life Holdings, Inc.  An Administrative Committee appointed at will by American Life administered the ESOP.  Bank One of Indianapolis as trustee held the Plan assets in trust for participants and beneficiaries.  In this action, Brown alleges that American Life, certain Administrative Committee members, and Bank One (i) breached their ERISA fiduciary duties by investing the ESOP's assets in overly

conservative investments while unreasonably delaying its rollover into American Life's Group Savings Plan, and (ii) failed to provide requested Plan documents as required by ERISA. Brown appeals the district court's[1] decision dismissing the fiduciary duty claims and granting only partial relief on the Plan documents claim. Having reviewed these summary judgment dispositions *de novo*, we affirm.

## I. The Fiduciary Duty Claims

For many years, Brown was a senior executive of American Life and its predecessor, which established the ESOP in 1970. On September 29, 1994, Conseco Capital Partners II ("Conseco") acquired American Life. The ESOP received some $22,000,000 in cash in exchange for the shares in the acquired company's stock which it held prior to the acquisition for the benefit of participants such as Brown. Receipt of the cash confronted the ESOP's fiduciaries with an investment decision. On that subject, the ESOP Plan provided in relevant part:

> 11.3 Unless the [Administrative] Committee directs the Trustee otherwise, the Trustee shall invest all funds in Company stock. If the Committee directs otherwise, the Trustee, at its discretion, may with any cash at any time held by it purchase or subscribe for and invest and reinvest in any securities or other property of any kind . . . .

On October 20, 1994, Bank One invested ninety percent of the cash in six-month United States Treasury securities and the remainder in a Bank One money market account. Bank One reinvested the ESOP assets in short-term United States government obligations in April 1995 and then placed the funds in a money market account in August 1995, where they remained until January 2, 1996, when the ESOP was rolled into American Life's Group Savings Plan.

---

[1]The HONORABLE ROBERT W. PRATT, United States District Judge for the Southern District of Iowa.

Brown first asserted breach of fiduciary claims in February 1998, alleging that his ESOP account would have earned $250,000 more in 1995 had defendants not breached their fiduciary duties. ERISA contains an express statute of limitations that bars breach of fiduciary duty claims after the earlier of six years from the breach or three years from the date that plaintiff acquires actual knowledge of the breach. See 29 U.S.C. § 1113. The district court dismissed Brown's claims as time-barred, concluding he had actual knowledge of the alleged breaches no later than January 1, 1995. On appeal, Brown argues the district court applied the wrong legal standard when it focused on his actual knowledge of defendants' investment transactions, rather than on his lack of knowledge of their breaches of duty. Brown claims he did not have actual knowledge of the breaches of fiduciary duty until October 7, 1997, when he received a written statement by a Senior Vice President of Conseco averring "there is no contemporaneous detailed explanation" of the decisions to continue the ESOP and to invest its assets in short-term government obligations.

This court has not discussed the actual knowledge component of § 1113(2), but we agree with the interpretive principles developed with substantial unanimity by our sister circuits. Because the statute requires "actual knowledge *of the breach or violation*," a plaintiff must have "actual knowledge of all material facts necessary to understand that some claim exists." Gluck v. Unisys Corp., 960 F.2d 1168, 1177 (3d Cir. 1992). In most cases, "disclosure of a transaction that is not inherently a statutory breach of fiduciary duty . . . cannot communicate the existence of an underlying breach." Fink v. National Sav. & Trust Co., 772 F.2d 951, 957 (D.C. Cir. 1985), quoted in Waller v. Blue Cross of California, 32 F.3d 1337, 1341 (9th Cir. 1994). Therefore, when a fiduciary's investment decision is challenged as a breach of an ERISA duty, the nature of the alleged breach is critical to the actual knowledge issue. For example, if the fiduciary made an *illegal* investment -- in ERISA terminology, engaged in a prohibited transaction -- knowledge of the transaction would be actual knowledge of the breach. But if the fiduciary made an *imprudent* investment, actual knowledge of the breach would usually require some knowledge of how the fiduciary

selected the investment.  See Maher v. Strachan Shipping Co., 68 F.3d 951, 955-56 (5th Cir. 1995), and cases cited.

In this case, Brown has confounded the statute of limitations issues by failing to clarify his breach of fiduciary duty claims.  In this court and the district court, he has resisted judicial attempts to pinpoint both the theories underlying his claims, and why he believes the facts support those theories.  Such a lack of clarity might be tolerable in reviewing a Rule 12 attack on Brown's complaint, but it is not when the issue is whether to grant summary judgment on a full discovery record.

Brown's amended complaint alleged in conclusory fashion a breach of the three fiduciary duties set forth in 29 U.S.C. § 1104(a)(1)(A)-(C), commonly known as the duties to be loyal and prudent, and to diversify investments.  The complaint went on to allege that defendants breached those duties "by taking an unreasonably long period of time" to decide whether to terminate the ESOP or to roll its assets into the Group Savings Plan, and "by failing to diversify the ESOP fund into higher yielding investments."  In his deposition testimony, Brown admitted he knew in October 1994 that the ESOP's $22,000,000 in cash would be invested in government obligations and money market funds.  He testified the fiduciaries should have rolled the ESOP into the Group Savings Plan or distributed its assets to beneficiaries by December 31, 1994.

Based upon this testimony, the district court concluded that Brown had actual knowledge of the alleged breaches of fiduciary duty by January 1, 1995, making his February 1998 claims time-barred.  Viewing the claims as the district court did, we agree.  The alleged failure to diversify, from Brown's perspective, was severe and apparent from an examination of the ESOP's assets any time after October 20, 1994. Assuming the fiduciary duty of prudent diversification can be breached by maintaining an investment portfolio that is *too safe and conservative* -- an issue we need not

address[2] -- Brown has admitted he had actual knowledge of the economic circumstances that would result in a breach of that duty by December 31, 1994. Likewise, from Brown's perspective, the fiduciaries' failure to timely decide the fate of the ESOP after the Conseco acquisition, and either distribute the fund to beneficiaries or roll it into the more aggressive and diversified Group Savings Plan, was apparent by the end of December 1994.

Brown argues that this is too narrow a view of his claims. He points to Conseco's October 1997 admission "there is no contemporaneous detailed explanation" of these investment decisions as revealing for the first time that all three fiduciary duties had been breached. But Brown fails to translate that disclosure into a viable breach of fiduciary duty theory that takes into account the specific provisions in ERISA governing an ESOP. He argues that Bank One improperly acted on oral instructions from American Life, rather than on directions from the dormant Administrative Committee, a contention supported by deposition testimony suggesting that American Life delayed in deciding what to do with the ESOP assets in part because it was considering an initial public offering of its stock in which the ESOP might invest. But this is precisely the type of control that ERISA confers on an employer whose plan is an ESOP. Congress intended to permit an ESOP to be used as a technique of corporate finance as well as a retirement benefit plan for employees. Therefore, an ESOP is *exempt* from the ERISA duty to diversify, and from ERISA's strict prohibitions against self-dealing and conflicts of interest. See 29 U.S.C. §§ 1104(a)(2), 1107(d)(3), 1108 (e)(3)(A); Martin v. Feilen, 965 F.2d 660, 664-65 (8th Cir. 1992), cert. denied, 506 U.S. 1054 (1993). There can be a breach of fiduciary duty when an ESOP engages in transactions in the employer's stock, for example, when fiduciaries engage in the "reprehensible self-dealing" at issue in Martin, 965 F.2d at 670-71. But ERISA duties are not breached by the mere fact that an ESOP fails to

---

[2]See generally Commercial Trust Co. of N.J. v. Barnard, 142 A.2d 865 (N.J. 1958); RESTATEMENT (THIRD) OF TRUSTS § 227, comment g (1990).

diversify, or that it engages in or contemplates employer-motivated transactions that would be prohibited self-dealing if done by a more conventional ERISA plan. Thus, the nebulous claims which Brown now accuses the district court of failing to consider would fail as a matter of law.

When an ERISA fiduciary makes investment decisions of the kind challenged in this case, there may be breaches of duty as to which a plaintiff will not have "actual knowledge" until he or she learns of the reasons for the fiduciary's decision, or the full nature of a complex transaction. But in this case, the only breach-of-fiduciary-duty theories that Brown clearly articulated are time-barred, as the district court concluded. Accordingly, the court's statute of limitations decision must be affirmed.

## II. Failure To Provide Plan Documents

On February 2, 1996, Brown wrote American Life requesting documents pertaining to the ESOP, namely, "the latest annual report, the Trust contract, minutes of administrative committee meetings since January 1, 1994, resolutions since January 1, 1994, written communication between the company, the administrative committee and the trustee since January 1, 1994, and any other documents under which the plan was established or is operated." American Life resisted, and a series of letters failed to resolve the dispute. Brown then commenced this action, seeking to recover monetary penalties of $100 per day for defendants' violations of their statutory obligation to provide ERISA plan documents within thirty days of a participant's request. See 29 U.S.C. §§ 1024(b)(4), 1132(c). The district court awarded Brown $5,725 for defendants' failure to timely send him a copy of the latest ESOP annual report. Neither party appeals that decision. Brown does appeal the court's conclusion that the other documents he requested are not within the scope of § 1024(b)(4), which provides in pertinent part:

> The administrator shall, upon written request of any participant or beneficiary, furnish a copy of the latest updated summary plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, *or other instruments under which the plan is established or operated.*

(Emphasis added.) The issue is whether the highlighted portion of the statute applies to documents such as employer actions changing the members of the ESOP's Administrative Committee, resolutions and minutes of the Administrative Committee, and written communications regarding investments between the employer or the Administrative Committee and Bank One as trustee.

The statute does not define the term "other instruments under which the plan is established or operated." The ordinary meaning of the word "instrument" is "[a] formal or legal document in writing, such as a contract, deed, will, bond, or lease . . . or [a] writing which gives formal expression to a legal act or agreement, for the purpose of creating, securing, modifying, or terminating a right." BLACK'S LAW DICTIONARY 801 (6th ed. 1990); see 29 U.S.C. § 1104(a)(1)(D) (fiduciary must discharge duties "in accordance with the *documents and instruments* governing the plan"). In § 1024(b)(4), the reference is to instruments "under which" the plan is established or operated. In common legal parlance, that means instruments which govern the plan, rather than those which simply evidence its operation. See Board of Trustees v. Weinstein, 107 F.3d 139, 142 (2d Cir. 1997). Bearing in mind that the term "other instruments" should also be read consistently with the more specific terms that precede it in § 1024(b)(4), see Eilbert v. Pelican, 162 F.3d 523, 527 (8th Cir. 1998), we agree with the circuits that have construed "other instruments" as meaning, not any document relating to a plan, but only formal documents that establish or govern the plan. See Board of Trustees, 107 F.3d at 142-44; Faircloth v. Lundy Packing Co., 91 F.3d 648, 652-54 (4th Cir. 1996), cert. denied, 519 U.S. 1077 (1997); Hughes Salaried Retirees Action Comm. v. Administrator of Hughes Non-Bargaining Retirement Plan, 72 F.3d 686, 689-91 (9th

Cir. 1995) (en banc), <u>cert. denied</u>, 517 U.S. 1189 (1996); <u>cf.</u> <u>Curtiss-Wright Corp. v. Schoonejongen</u>, 514 U.S. 73, 84 (1995) (referring to § 1024(b)(4) as requiring the furnishing of "governing plan documents").  "This is not to say, of course, that companies have a permanent privilege against disclosing other documents.  It means only that the affirmative obligation to disclose materials under [§ 1024(b)(4)], punishable by [statutory] penalties, extends only to a defined set of documents." <u>Ames v. American Nat'l Can Co.</u>, 170 F.3d 751, 759 (7th Cir. 1999).

The district court construed the term "other instruments" in precisely this fashion, limiting it "to formal documents that govern the plan, not to all documents by means of which the plan conducts operations."  We disagree with the court's alternative conclusion that the word "or" preceding this clause means that "other instruments" need only be provided to requesting participants if the specifically listed formal documents are not available.[3]  But construing § 1024(b)(4) as requiring the production of the specified documents *and* any additional "other instruments" does not change the result in this case.  The additional documents Brown requested -- corporate actions replacing members of the Administrative Committee, minutes of Administrative Committee meetings, and written communications with Bank One -- evidence the day-

---

[3]The "or" in § 1024(b)(4) comes at the end of a list of items separated by commas.  Normally, of course, "or" is disjunctive; it does not mean "and."  But the Supreme Court has noted that "the word 'or' is often used as a careless substitute for the word 'and' . . . where 'and' would express the thought with greater clarity." <u>De Sylva v. Ballentine</u>, 351 U.S. 570, 573 (1956); <u>see</u> <u>United States v. Moore</u>, 613 F.2d 1029, 1040 (D.C. Cir. 1979), <u>cert. denied</u>, 446 U.S. 954 (1980).  In our view, limiting the duty to provide "other instruments" to cases in which the enumerated forms of governing plan documents do not exist would be unnecessarily restrictive.

to-day operations of the ESOP. They were not governing plan documents, those under which the ESOP was established and operated. Thus, the district court properly limited the statutory penalty to defendants' failure to timely produce the ESOP annual report.

The judgment of the district court is affirmed.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.