2004 ND 145

MINN–KOTA AG PRODUCTS, INC., and Minn–Kota Ag Products, Inc. 401(K) Profit Sharing Plan, Plaintiffs and Appellants,

v.

Bruce H. CARLSON and McNair, Larson & Carlson, Ltd., Defendants and Appellees.

No. 20030303.

Supreme Court of North Dakota.

July 6, 2004.

James P. Carey (argued) of Sieben, Grose, Von Holtum & Carey, Ltd., Minneapolis, MN, and Richard E.T. Smith and Jason R. Butts of Smith, Strege & Fredericksen, Wahpeton, N.D., for plaintiffs and appellants.

David S. Maring (argued) and Anthony J. Weiler of Maring Williams Law Office, Bismarck, N.D., for defendants and appellees.

NEUMANN, Justice.

[¶ 1] Minn–Kota Ag Products, Inc., and Minn–Kota Ag Products, Inc. 401(K) Profit Sharing Plan ("Minn–Kota") appeal from the district court's summary judgment in favor of Bruce H. Carlson and McNair, Larson & Carlson, Ltd. ("Carlson") dismissing Minn–Kota's legal malpractice action against Carlson. Because Minn–Kota had actual knowledge, as a matter of law, of Norwest's breach or violation of its fiduciary duty at least three years before it retained Carlson, and that knowledge triggered the three-year statute of limitations more than three years before Carlson was retained, we affirm.

I

[¶ 2] The underlying facts are undisputed. In 1988, Minn–Kota Products, Inc., established a 401(K) Profit–Sharing Plan ("Plan") for its employees. Norwest Bank North Dakota, now known as Wells Fargo ("Norwest"), was trustee of the Plan. As early as 1991, Minn–Kota was not satisfied with Norwest's handling of the Plan. In 1991, Minn–Kota knew Norwest had failed to file Form 5500 and tax returns for the Plan. Form 5500 is an annual report of an employee benefit plan to be filed with the United States Secretary of Labor as required under 29 U.S.C. §§ 1023 and 1024. By 1992, Minn–Kota was seeking a successor trustee. In December 1993, Minn–Kota Products transferred the Plan's assets to First National Bank North Dakota ("First National"). Early in 1994, Minn–Kota hired John Power, a certified public accountant, to review its concerns with Norwest's handling of the Plan. Power observed problems resulting from Norwest's handling of the Plan, including a failure to provide requested Plan documents, unorganized files and documentation, irregularities with accountings, excess distributions to retirees, and failure to file required forms and tax returns. Power wrote letters to the Internal Revenue Service explaining the problems and requesting waiver of any penalties because Norwest had caused the problems rather than Minn–Kota. On March 22, 1994, Dan Braton, then controller of Minn–Kota, wrote a memorandum describing his communications with Diann C. Johnson of the Internal Revenue Service, during which she

stressed the importance of detailing Norwest's negligence. On August 2, 1994, Minn–Kota representatives, John Power, and Steve Remark, a regional manager of First National, met with Pam Anderson and Vicki Weber of Norwest. Darrell Peterson of Minn–Kota prepared a memorandum to the board of directors explaining the discussions held at that meeting relating to problems with Norwest's handling of the Plan. The memorandum noted Minn–Kota representatives told Pam Anderson the "IRS could be looking at $300,000 in penalties and interest—maybe more & hopefully less" and Steve Remark "had grave concerns about the Dept. of Labor and the potental [sic] audit that could occur." Sigco Sun Products, Inc., is a sister corporation of Minn–Kota with several directors and shareholders in common. On September 15, 1994, Attorney Karl Cambronne sued Norwest on behalf of Sigco Sun Products, Inc. Profit Sharing 401(K) Plan, alleging many of the same breaches of fiduciary duty later asserted in Minn–Kota's case against Norwest. In June 1995, Minn–Kota talked with Cambronne regarding the possibility of a lawsuit against Norwest regarding Minn–Kota's Plan. On June 14, 1995, Marilyn Anderson, a Minn–Kota controller, wrote to Cambronne listing problems Minn–Kota had with Norwest's handling of the Plan, specifically noting:

Prohibited transaction excise taxes.

Cost of correcting prohibited transactions: Surrender charges, etc.

ERISA penalties: Failure to provide summary plan descriptions, annual reports, etc.

Lack of written plan documents.

Correction of incorrect distributions, etc., due to accounting errors (annuity valuation mistakes).

Questionable interest rates and loan amounts to participants.

On October 16, 1996, Power submitted a final report to First National, with a copy to Minn–Kota, providing a detailed summary of Minn–Kota's problems caused by Norwest. In November 1996, Minn–Kota representatives met with Carlson regarding a possible claim against Norwest, but did not retain Carlson at that time.

[¶ 3] In September 1998, Minn–Kota retained Carlson to represent it in a legal action against Norwest for breach of fiduciary duty under the Employee Retirement Income Security Act ("ERISA"). In March 2000, Carlson filed an action against Norwest on behalf of Minn–Kota in federal district court alleging ERISA violations. The federal district court issued a summary judgment in favor of Norwest dismissing the action as untimely under the three-year statute of limitations applicable to ERISA under 29 U.S.C. § 1113. The Eighth Circuit Court of Appeals affirmed the federal district court's grant of summary judgment.

[¶ 4] In September 2002, Minn–Kota sued Carlson, alleging Carlson had committed legal malpractice by failing to file an action against Norwest within the statute of limitations. Carlson moved for summary judgment, asserting he did not commit legal malpractice by failing to bring an action on behalf of Minn–Kota within the statute of limitations because the statute of limitations had expired before he was retained as counsel. The district court found "as a matter of law Minn–Kota had actual knowledge of a breach or violation by Norwest more than three years before" Carlson was retained. The district court granted summary judgment in Carlson's favor dismissing Minn–Kota's action with prejudice. Minn–Kota appeals, arguing the district court improperly granted summary judgment by determining Minn–Kota had actual knowledge of a breach or violation more than three years

before Carlson was retained, triggering the three-year statute of limitations for bringing an ERISA action.

## II

[¶ 5] Whether a district court appropriately granted summary judgment is a question of law subject to a *de novo* standard of review. *Iglehart v. Iglehart,* 2003 ND 154, ¶ 9, 670 N.W.2d 343. Summary judgment is a procedural device for disposing of an action without a trial if a party is entitled to judgment as a matter of law, and no dispute exists as to the material facts or the reasonable inferences to be drawn from the undisputed facts, or if resolving disputed facts will not change the result. *Iglehart,* 2003 ND 154, ¶ 9, 670 N.W.2d 343; N.D.R.Civ.P. 56. This Court reviews the evidence in a light most favorable to the opposing party and determines if summary judgment was appropriately granted as a matter of law. *Iglehart,* at ¶ 9, 670 N.W.2d 343. In *Iglehart,* we stated:

> Although the party seeking summary judgment has the burden of showing that there is no genuine issue of material fact, the party resisting the motion may not simply rely upon the pleadings. Nor may the opposing party rely upon unsupported, conclusory allegations. The resisting party must present competent admissible evidence by affidavit or other comparable means which raises an issue of material fact and must, if appropriate, draw the court's attention to relevant evidence in the record by setting out the page and line in depositions or other comparable documents containing testimony or evidence raising an issue of material fact.
>
> In summary judgment proceedings, neither the trial court nor the appellate court has any obligation, duty, or responsibility to search the record for evidence opposing the motion for summary judgment. The opposing party must also explain the connection between the factual assertions and the legal theories in the case, and cannot leave to the court the chore of divining what facts are relevant or why facts are relevant, let alone material, to the claim for relief. Additionally, mere speculation is not enough to defeat a motion for summary judgment. A scintilla of evidence is not sufficient to support a claim, there must be enough evidence for a reasonable jury to find for the plaintiff.

2003 ND 154, ¶ 10, 670 N.W.2d 343 (citations omitted).

## III

[¶ 6] Minn–Kota argues the district court improperly granted summary judgment because this case stems from a legal malpractice action involving issues of negligence calling for extensive factual findings, making summary judgment inappropriate. Carlson argues the district court properly granted summary judgment; as a matter of law Carlson could not have committed legal malpractice by missing the statute of limitations because the statute of limitations had already run by the time he was retained.

[¶ 7] Professional negligence in a legal malpractice action involves establishing the existence of an attorney and client relationship, an attorney's duty to a client, an attorney's breach of that duty, and damages caused by the attorney's breach. *Larson v. Norkot Manufacturing, Inc.,* 2002 ND 175, ¶ 10, 653 N.W.2d 33; *Dan Nelson Construction v. Nodland & Dickson,* 2000 ND 61, ¶ 14, 608 N.W.2d 267. Although a legal malpractice action is generally not appropriate for summary judgment, particularly when it involves an issue of proximate cause, *Dan Nelson Construction,* at ¶ 15, 608 N.W.2d 267, "issues

of fact may become questions of law if reasonable persons could reach only one conclusion from the facts." *Iglehart,* 2003 ND 154, ¶ 9, 670 N.W.2d 343.

[¶ 8] The fourth element of a legal malpractice action, damages caused by the alleged breach, is the underlying consideration of this case. "When it is alleged that an attorney negligently failed to perform some act on behalf of the client, the plaintiff must allege and prove performance of the act would have benefitted the client." *Dan Nelson Construction,* 2000 ND 61, ¶ 14, 608 N.W.2d 267. Determining whether Minn–Kota had actual knowledge of a breach or violation by Norwest more than three years before it retained Carlson also determines whether Carlson caused the plaintiff damage by failing to timely file the action. Because the merits and outcome of the underlying legal malpractice case rest on determining a question of law, summary judgment is appropriate. *See Dan Nelson Construction,* at ¶ 15, 608 N.W.2d 267.

## IV

[¶ 9] Minn–Kota argues the district court erred in granting summary judgment because genuine issues of fact and reasonable inferences to be drawn from the facts exist as to whether Minn–Kota had actual knowledge of Norwest's breach or violation of its fiduciary obligation to Minn–Kota under ERISA, sufficient to trigger the three-year statute of limitations for commencing an action. Specifically, Minn–Kota asserts the determination of what constitutes actual knowledge and when Minn–Kota acquired actual knowledge of Norwest's breach or violation involves extensive factual findings that should be resolved by a fact finder. Minn–Kota maintains a jury should be allowed to assess credibility and make factual determinations as to when Minn–Kota had actu-

al knowledge of Norwest's breach. According to Minn–Kota, it knew "something was awry," but did not know it had a cause of action for a violation or breach under ERISA. Minn–Kota directs this Court to various undisputed factual transactions between 1991 and 1995 and, by way of unsupported speculation, attempts to draw disputable inferences. The mere speculations Minn–Kota has raised are not enough to defeat a motion for summary judgment. *See Iglehart,* 2003 ND 154, ¶ 10, 670 N.W.2d 343 (citations omitted). On this record, we are not persuaded reasonable persons could reach varying conclusions sufficient to find for the plaintiff.

[¶ 10] ERISA has an express statute of limitations barring breach of fiduciary duty claims three years after the earliest date a plaintiff has actual knowledge of the breach. The statute of limitations governing ERISA actions provides:

> No action may be commenced under this subchapter with respect to a fiduciary's breach of any responsibility, duty, or obligation under this part, or with respect to a violation of this part, after the earlier of
>
> (1) six years after (A) the date of the last action which constituted a part of the breach or violation, or (B) in the case of an omission, the latest date on which the fiduciary could have cured the breach or violation, or
>
> (2) *three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation;*
>
> except that in the case of fraud or concealment, such action may be commenced not later than six years after the date of discovery of such breach or violation.

29 U.S.C. § 1113 (emphasis added).

[¶ 11] This Court has not addressed actual knowledge in the context of an ERISA

claim, therefore, we are guided by federal courts. Our review of federal court decisions reveals a range of standards applied in determining actual knowledge in an ERISA action. *See, e.g., Brown v. American Life Holdings, Inc.,* 190 F.3d 856, 859 (8th Cir.1999) (quoting *Gluck v. Unisys Corp.,* 960 F.2d 1168, 1177 (3rd Cir.1992)), (holding, "a plaintiff must have 'actual knowledge of all material facts necessary to understand that some claim exists'"); *Gluck,* 960 F.2d at 1177–78 (holding "a plaintiff have actual knowledge of all material facts necessary to understand that some claim exists," and reasoning "[a]ctual knowledge of a breach or violation requires knowledge of all relevant facts at least sufficient to give the plaintiff knowledge that a fiduciary duty has been breached or ERISA provision violated"); *Martin v. Consultants & Adm'rs, Inc.,* 966 F.2d 1078, 1086 (7th Cir.1992) (holding "the relevant knowledge for triggering the statute of limitations is knowledge of the *facts or transaction* that constituted the alleged violation ... it is not necessary for a potential plaintiff to have knowledge of every last detail of a transaction, or knowledge of its illegality," reasoning "somewhere between 'every last detail' and 'something was awry' lies the requisite knowledge of an ERISA violation" and generalizing that "[t]he proper characterization will usually turn in part on the complexity of the underlying factual transaction, the complexity of the legal claim and the egregiousness of the alleged violation" (emphasis in original)); *Caputo v. Pfizer, Inc.,* 267 F.3d 181, 193 (2nd Cir. 2001) (citing *Blanton v. Anzalone,* 760 F.2d 989, 992 (9th Cir.1985)) (holding a plaintiff "must have knowledge of all facts necessary to constitute a claim"); *Richard B. Roush, Inc. Profit Sharing Plan v. New England Mut. Life Ins. Co.,* 311 F.3d 581, 585 (3rd Cir.2002) (holding actual knowledge as requiring "not only actual knowledge of the facts giving rise to the fiduciary violation but also as requiring actual knowledge that those facts support a cause of action under ERISA"); *Int'l Union of Elect., Elect., Salaried, Mach. and Furniture-Workers v. Murata Erie N. Am., Inc.,* 980 F.2d 889, 900 (3rd Cir.1992) (holding actual knowledge as requiring "a showing that plaintiffs actually knew not only of the events that occurred which constitute the breach or violation but also that those events supported a claim of breach of fiduciary duty or violation under ERISA").

[¶ 12] The range of standards applied by federal courts in determining actual knowledge in the context of ERISA is helpful to our consideration; however, adopting a specific standard is not necessary to our decision in this case. On this record, Minn–Kota had actual knowledge by June 14, 1995, under even the most stringent of federal applications. The record evidences actual knowledge of Norwest's breaches or violations before 1995 and actual knowledge that those breaches or violations support a claim under ERISA.

[¶ 13] As early as 1991, Minn–Kota was not satisfied with Norwest's handling of the Plan and knew Norwest had failed to file required forms and tax returns for the Plan, giving rise to potential penalties. Sigco, Minn–Kota's sister corporation with several directors and shareholders in common, hired attorney Cambronne who commenced a federal action for Sigco against Norwest alleging many of the same ERISA violations later claimed by Minn–Kota. Minn–Kota hired a certified public account and an attorney, consequently incurring fees and costs. On June 9, 1995, Cambronne wrote a letter to Norwest's attorney on Minn–Kota's behalf documenting problems with Norwest's handling of Minn–Kota's Plan, which stated in closing "I trust you agree it is best to have this

type of a problem resolved without the necessity of lawyers and lawsuits," evidencing Minn–Kota knew some claim was supported. On June 20, 1995, Cambronne wrote to Norwest's attorney enclosing a June 14, 1995, letter he had received from Marilyn Anderson, Minn–Kota's controller. Anderson detailed specific problems Minn–Kota had with Norwest's handling of the Plan. Each listed problem related to a known breach, violation, expenditure, or penalty that Minn–Kota had suffered because of Norwest's handling of the Plan. The undisputed facts prove Minn–Kota had actual knowledge of all material facts necessary to understand some claim existed due to Norwest's breaches or violations by June 14, 1995, at the latest, triggering the three-year statute of limitations.

## V

[¶ 14] Whether Minn–Kota had actual knowledge sufficient to trigger the three-year statute of limitations is a question of law. Although questions of law may depend on facts to be determined by a fact finder, that is not the case here. Minn–Kota has not presented facts or drawn reasonable inferences from the undisputed facts that would allow a fact finder to reasonably find Minn–Kota did not have actual knowledge of Norwest's breaches or violations under ERISA, by June 14, 1995, three years before retaining Carlson. The record clearly shows that Minn–Kota had actual knowledge, as a matter of law, of Norwest's breaches or violations at least by June 14, 1995, triggering the three-year statute of limitations.

[¶ 15] The district court's summary judgment dismissing Minn–Kota's legal malpractice claim against Carlson with prejudice is affirmed.

[¶ 16] GERALD W. VANDE WALLE, C.J., KIRK SMITH, S.J., DALE V. SANDSTROM, and CAROL RONNING KAPSNER, JJ., concur.

[¶ 17] The Honorable KIRK SMITH, Surrogate Judge, sitting in place of MARING, J., disqualified.