2004 ND 194

**David (D.K.) LONG, Plaintiff, Appellant and Cross–Appellee**

v.

**L.J. JASZCZAK, M.D., Defendant, Appellee and Cross–Appellant.**

David (D.K.) Long, Plaintiff, Appellant and Cross–Appellee

v.

Mercy Medical Center, Joseph E. Adducci, Defendants, Appellees and Cross–Appellants

and

William E. Code, Defendant.

Nos. 20040088, 20040089.

Supreme Court of North Dakota.

Oct. 18, 2004.

B. Timothy Durick (argued) of Pearce & Durick, Bismarck, N.D., for plaintiff, appellant, and cross-appellee.

John C. Kapsner (argued) of Vogel Law Firm, Bismarck, N.D., for defendants, appellees, and cross-appellants L.J. Jaszczak, M.D., and Mercy Medical Center.

Jack G. Marcil (argued) and Joseph A. Wetch, Jr., of Serkland Law Firm, Fargo, N.D., for defendant, appellee, and cross-appellant Joseph E. Adducci, M.D.

NEUMANN, Justice.

[¶ 1] David Long appeals from the district court's summary judgment dismissing his wrongful death action, arising out of complications from a medical procedure performed on his wife, Jane Long. Dr. Adducci, Dr. Jaszczak, and Mercy Medical Center cross-appeal. We reverse and remand the dismissal of Dr. Adducci because he owed a legal duty to obtain Jane Long's informed consent and because the issues of materiality of risk and causation are questions for the trier of fact. We affirm the dismissal of Dr. Jaszczak and Mercy Medical Center because the claim against Dr. Jaszczak is barred by the statute of limitations, and because Mercy Medical Center did not owe a legal duty of care to Jane Long.

I

[¶ 2] On July 6, 1999, Dr. Joseph E. Adducci examined Jane Long for a recurring urinary tract infection. Dr. Adducci ordered an intravenous pyelogram ("IVP"), a procedure involving x-rays of the upper urinary tract after the patient is injected with a contrast media. On July 9, 1999, Jane Long arrived at Mercy Medical Center for an IVP. Dr. L.J. Jaszczak was the radiologist who supervised the IVP. During the IVP, Jane Long experienced an allergic reaction and went into severe anaphylactic shock. She never regained consciousness and died on July 24, 1999.

[¶ 3] David Long sued Dr. Adducci, Dr. Jaszczak, and Mercy Medical Center claiming the doctors failed to obtain Jane Long's informed consent before she agreed to the procedure, and Mercy Medical Center's policies regarding informed consent were either negligent or negligently administered. According to David Long, Jane Long was feeling better the day she went in for the IVP and would not have consented to the procedure if she had been fully informed of the risks involved. Dr. Adducci and Dr. Jaszczak admit they never explained the risks related to an IVP to Jane Long.

[¶ 4] On motions for summary judgment, the district court dismissed Mercy Medical Center finding David Long failed to disclose an expert to testify about hospital administration standards within the statutory three-month period. The district court also dismissed the claims against the doctors finding David Long failed to establish a causal link between the failure to disclose the risks of an IVP and the injury suffered.

[¶ 5] David Long appeals, arguing the district court incorrectly determined he had failed to establish causation and that he had a legal obligation to provide expert testimony to support his claim against Mercy Medical Center.

[¶ 6] Dr. Adducci and Dr. Jaszczak cross-appeal, arguing the district court incorrectly found David Long commenced this action within the statute of limitations. The doctors also argued they are entitled to summary judgment because David Long failed to acquire an expert to support allegations of malpractice. Mercy Medical Center cross-appeals, arguing the hospital

did not owe a duty to David Long to have an informed consent policy.

## II

[¶ 7] Whether a district court properly granted summary judgment is a question of law subject to a *de novo* standard of review on the entire record. *Minn–Kota Ag Products, Inc. v. Carlson*, 2004 ND 145, ¶ 5, 684 N.W.2d 60. Under N.D.R.Civ.P. 56, summary judgment is appropriate if no dispute exists as to the material facts or the reasonable inferences to be drawn from the undisputed facts, or if resolving disputed facts will not change the result and any party is entitled to judgment as a matter of law. *Minn–Kota Ag Products*, 2004 ND 145, ¶ 5, 684 N.W.2d 60. The evidence is reviewed in a light most favorable to the opposing party. *Id.*

## III

[¶ 8] On cross-appeal, Dr. Adducci and Dr. Jaszczak argued the district court incorrectly found David Long filed his claims against them within the statute of limitations. David Long argued the district court was correct because the statute of limitations would not have started to run until a reasonable time after Jane Long's death, in order to give the family time to determine whether malpractice occurred. This is contrary to North Dakota law.

[¶ 9] Actions for the recovery of damages from malpractice have a two-year statute of limitations. N.D.C.C. § 28–01–18(3). In cases in which death is the result of medical malpractice, "the claim for relief is deemed to have accrued at the time of the discovery of the malpractice." N.D.C.C. § 28–01–18(4). This Court has adopted the discovery rule in medical malpractice cases holding, "the two-year statute of limitations begins to run when the

plaintiff knows, or with reasonable diligence should know, of (1) the injury, (2) its cause, and (3) the defendant's possible negligence." *Schanilec v. Grand Forks Clinic, Ltd.*, 1999 ND 165, ¶ 12, 599 N.W.2d 253. The objective question is "whether the plaintiff has been apprised of facts which would place a reasonable person on notice that a potential claim exists." *Wheeler v. Schmid Laboratories, Inc.*, 451 N.W.2d 133, 137 (N.D.1990). The plaintiff does not have to be "subjectively convinced that he has been injured and that the injury was caused by the defendant's negligence." *Id.* A malpractice plaintiff's knowledge is ordinarily a question of fact which is inappropriate for summary judgment. *Schanilec*, 1999 ND 165, ¶ 20, 599 N.W.2d 253. However, this issue becomes a question of law when reasonable minds could come to but one conclusion. *Id.*

[¶ 10] On July 9, 1999, Jane Long entered Mercy Medical Center to undergo a scheduled IVP. During the procedure, she experienced anaphylactic shock and went into a coma. David Long arrived at the hospital shortly after she went into shock. On July 9, 1999, reasonable minds could come to but one conclusion, David Long was apprised of the facts which would place a reasonable person on notice that a potential claim of medical malpractice existed. Rule 6(a), N.D.R.Civ.P., states: "In computing any period of time prescribed or allowed ... by any applicable statute, the day of the act, event, or default from which the designated period of time begins to run may not be included." Therefore, the statute of limitations began to run on July 10, 1999. The record contains a sheriff's return certifying Dr. Jaszczak's summons and complaint were delivered to the sheriff on July 13, 2001. The return further certifies Dr. Jaszczak was personally served on July 13, 2001. Accordingly, David Long's claim against Dr. Jaszczak is

barred by the statute of limitations. However, David Long's claim against Dr. Adducci is not barred by the statute of limitations.

[¶ 11] The applicable statute of limitations requires that an action "must be commenced within two years after the claim for relief has accrued." N.D.C.C. § 28–01–18. As we previously stated, David Long's claim accrued on July 9, 1999, and the statute of limitations began to run on July 10, 1999. An action is commenced when the summons is personally served on a defendant, or "when the summons, with the intent that it shall be actually served, is delivered: (1) To the sheriff or other officer of the county in which the defendant[ ] ... reside[s]." N.D.C.C. § 28–01–38(1). In accordance with N.D.C.C. § 28–01–38, this Court has held that the delivery of a summons to a sheriff, with the intent to promptly serve the defendant, commences an action. *Elliot v. Drayton Pub. Sch. Dist. No. 19,* 406 N.W.2d 655, 659 (N.D.1987). David Long delivered the summons and complaint to the sheriff of Williams County on July 9, 2001, with the intent it would be served on Dr. Adducci. Dr. Adducci resides in Williams County. Under these facts, David Long met the procedural requirements of N.D.C.C. § 28–01–38(1). Therefore, the action against Dr. Adducci commenced on July 9, 2001, on the last day before the statute of limitations expired. David Long's claim against Dr. Adducci is not barred by the statute of limitations.

## IV

[¶ 12] David Long's claim of medical malpractice against Dr. Adducci is based on the doctrine of informed consent. We recently explained:

The doctrine of informed consent is essentially the duty of a physician to disclose sufficient information to permit a patient to make an informed and intelligent decision on whether to submit to a proposed course of treatment or surgical procedure. If a physician fails to obtain a patient's informed consent, the physician may be found negligent. A plaintiff in an informed-consent case must establish breach of a physician's duty of disclosure, causation, and injury. An integral part of a physician's duty to a patient is the disclosure of available choices for treatment and the material and known risks involved with each treatment.

*Flatt v. Kantak,* 2004 ND 173, ¶ 6, 687 N.W.2d 208 (citations omitted). For David Long's claim to prevail, Dr. Adducci must have a legal duty to obtain Jane Long's informed consent to undergo the IVP. Generally, whether a duty exists is a "preliminary question of law for the court to decide." *Azure v. Belcourt Pub. Sch. Dist.,* 2004 ND 128, ¶ 9, 681 N.W.2d 816.

## A

[¶ 13] We recently analyzed the duty of a doctor to obtain the informed consent of a patient stating, a "referring physician can be held liable only when that physician has formally ordered a procedure or actually participated in the treatment or procedure." *Koapke v. Herfendal,* 2003 ND 64, ¶ 23, 660 N.W.2d 206. According to Dr. Adducci's deposition testimony, he ordered Jane Long's IVP as a diagnostic tool to determine if she was experiencing more serious medical problems. Dr. Adducci testified he would use the IVP results to determine the next step in her treatment, such as whether she would need to be referred to a specialist. Dr. Adducci gave Jane Long the choice to have the IVP performed at the hospital or Dr. Shahin's office. According to Dr. Adducci, Dr. Shahin is a urologist in town who performs IVPs at his office. Jane

Long chose to have her IVP performed at the hospital. Dr. Adducci referred her to the hospital for the IVP, not to a specific doctor.

[¶ 14] Dr. Jaszczak was the radiologist on duty during Jane Long's IVP. In his deposition, he testified Dr. Adducci was the ordering physician. Dr. Jaszczak asserted he was not present at every single radiology procedure because there were many going on at the hospital and there were simply too many for him to attend. He explained that the radiology technologist, who actually performs the IVP, usually discusses side effects with patients before they undergo the procedure.

[¶ 15] In agreement with a majority of jurisdictions, we have stated:

> [I]t clearly is not necessary for every physician or health care provider who becomes involved with a patient to obtain informed consent for every medical procedure to which the patient submits. Rather, it is the responsibility of a physician to obtain informed consent for those procedures and treatments that the physician formally prescribes or performs.

*Koapke*, 2003 ND 64, ¶ 18, 660 N.W.2d 206 (citations omitted). Informed consent is based on the concept that a patient should have sufficient information "to make an informed and intelligent decision on whether to submit to a proposed course of treatment or surgical procedure." *Id.* at ¶ 14 (citing *Jaskoviak v. Gruver*, 2002 ND 1, ¶ 13, 638 N.W.2d 1). Dr. Adducci was Jane Long's primary physician. While treating her for a recurrent urinary infection, he recommended she undergo an IVP to determine if more serious medical complications existed. For Jane Long to make an informed and intelligent decision whether to undergo the IVP, Dr. Adducci should have informed her of the associated risks and of the available alternative pro-cedures before she went to the hospital. The record in this case is clear: There is no disputed issue of fact concerning the nature and purpose of the IVP as nothing more than an aid to Dr. Adducci's diagnosis and continuing care of Jane Long. On this record, as the ordering physician, Dr. Adducci had a legal duty to obtain Jane Long's informed consent to the IVP. *See Koapke*, 2003 ND 64, ¶ 18, 660 N.W.2d 206.

B

[¶ 16] Dr. Adducci argues he did not breach the duty of disclosure because David Long failed to establish death was a material risk. The district court found the extremely remote risk of death would not have been significant to a reasonable person in Jane Long's circumstances.

[¶ 17] "A plaintiff must show the existence of a material risk that the physician failed to disclose, as well as causation and an injury." *Koapke*, 2003 ND 64, ¶ 14, 660 N.W.2d 206. Assessing whether a risk is material "involves a two-pronged analysis: (1) 'an examination of the existence and nature of the risk and the probability of its occurrence'; and (2) 'a determination by the trier of fact of whether the risk is the type of harm which a reasonable patient would consider in deciding on medical treatment.'" *Jaskoviak*, 2002 ND 1, ¶ 18, 638 N.W.2d 1 (quoting *Guidry v. Neu*, 708 So.2d 740, 744 (La.Ct. App.1997)). Generally, whether a reasonable patient in the plaintiff's position would attach significance to the specific risk is a question of fact for the jury to decide. *Id.* at ¶ 18 (relying on *Guidry*, 708 So.2d at 744). "Only when the evidence is such that reasoning minds could draw but one conclusion does the fact question become a question of law for which summary judgment may be appropriate." *Schmidt v. First Nat'l Bank and Trust Co.*, 453 N.W.2d 602, 605 (N.D.1990).

[¶ 18] The undisputed evidence before the district court, regarding the risk of death and the probability of its occurrence, indicated that somewhere between 1 in 40,000 to 1 in 150,000 patients undergoing an IVP would die. The second prong of the test requires a determination of "whether the risk is the type of harm which a reasonable patient would consider in deciding on medical treatment." *Jaskoviak*, 2002 ND 1, ¶ 18, 638 N.W.2d 1. This Court is unwilling to rule, as a matter of law, a patient undergoing a diagnostic procedure would not at least consider the risk of death when making the decision whether to proceed. Whether a reasonable patient would consider the risk of death material is a question for the trier of fact to decide. *See id.*

## C

[¶ 19] The district court dismissed David Long's claim against Dr. Adducci for failure to establish a causal link. The court found, as a matter of law, a reasonable patient's willingness to undergo an IVP would not have been affected by being informed of the remote risk of death. On appeal, David Long argues summary judgment was inappropriate because whether a fully informed, reasonable patient would have refused the IVP is a question of fact for the jury to decide. We recently stated:

Along with establishing nondisclosure of required information, causation, and actual damage resulting from the undisclosed risk, a plaintiff must also show that reasonable persons, if properly informed, would have rejected the proposed treatment. A causal connection exists only when adequate disclosure would have caused the patient to withhold consent to the particular course of treatment or procedure.

*Koapke v. Herfendal,* 2003 ND 64, ¶ 14, 660 N.W.2d 206 (citations omitted).

[¶ 20] Here, the undisputed evidence established the risk of death from an IVP at somewhere between 1 in 40,000 to 1 in 150,000. Dr. Adducci relies on *Pauscher v. Iowa Methodist Med. Ctr.,* 408 N.W.2d 355 (Iowa 1987), arguing the risk of death is so remote that, as a matter of law, a fully informed reasonable patient would not withhold consent. In *Pauscher,* a twenty-six-year-old woman gave birth to her first child. *Id.* at 357. Four days later, while still hospitalized, she developed a fever, pain in her right side, and began to discharge large amounts of blood in her urine. *Id.* The next day, fearing a potentially life-threatening obstruction might be in her urinary tract, her doctor ordered an IVP for the next morning. *Id.* During the IVP she experienced anaphylactic shock and died. *Id.* Her husband sued the doctors, claiming they failed to obtain her informed consent. *Id.* at 358. The trial record indicated the risk of death was 1 in 100,000 to 1 in 150,000. *Id.* at 357. The court concluded this remote risk of death would not have affected the willingness of a person in Pauscher's circumstances to undergo the IVP. *Id.* at 362.

[¶ 21] Jane Long was being treated for a recurrent urinary infection and had a small amount of blood in her urine. Her situation was arguably less life threatening than the patient in *Pauscher. Id.* at 357. This Court is not aware of any jurisdiction holding that knowing the risk of death would not affect the willingness to undergo an IVP of a person in Jane Long's circumstances. Whether a person in Jane Long's situation would undergo the IVP is a question for the trier of fact. We reverse and remand the dismissal of Dr. Adducci on the grounds he owed a legal duty to obtain Jane Long's informed consent and the is-

sues of materiality of risk and causation are questions for the trier of fact.

## D

[¶ 22] Dr. Adducci argues the district court erred in denying summary judgment because David Long failed to submit expert testimony. Dr. Adducci argues expert testimony is necessary to prove the risks, their gravity, the likelihood of occurrence and reasonable alternatives. He also argues expert testimony is necessary to prove whether a physician would consider the risk of death material, and therefore require disclosure. However, "[u]ltimately, a 'trier of fact must determine whether a reasonable person in the plaintiff's position would attach significance to the specific risk.' " *Jaskoviak*, 2002 ND 1, ¶ 18, 638 N.W.2d 1 (quoting *Guidry v. Neu*, 708 So.2d 740, 744 (La.Ct. App.1997)). Accordingly, we reject Dr. Adducci's argument that expert testimony is necessary to prove David Long's claim of informed consent.

[¶ 23] We have stated:

Expert medical testimony is generally necessary to identify the risks of treatment, their gravity, likelihood of occurrence, and reasonable alternatives. The necessity for expert testimony is particularly so when such information is outside the common knowledge of laymen. Expert testimony may be necessary under the lay standard, at least to establish the existence of a risk, its likelihood of occurrence, and the type of harm in question; after that, however, expert evidence may not be required. However, experts may be required to show both that material information existed and that the defendant should reasonably have known about it.

*Jaskoviak*, 2002 ND 1, ¶ 19, 638 N.W.2d 1 (citations omitted). Here, expert testimony is unnecessary because the record has es-tablished the existence of a risk, its likelihood of occurrence, and the type of harm in question. The undisputed evidence established the risk of death from an IVP at somewhere between 1 in 40,000 to 1 in 150,000. The remaining question is whether a reasonable person would consider the risk of death significant. Expert testimony is not required to determine whether a reasonable person in Jane Long's circumstances would attach significance to the risk of death. *See id.* at ¶ 19. As we have stated, this is a question for the trier of fact. *Id.* at ¶ 18.

## V

[¶ 24] David Long argued Mercy Medical Center's informed consent policies were either negligent or negligently administered. Mercy Medical Center argued it did not have a duty to obtain the informed consent of its patients. It argued the duty to obtain informed consent is solely the doctor's responsibility. Mercy Medical Center argued that because it did not owe a legal duty to obtain informed consent, its policies are not negligent.

[¶ 25] We recently explained:

Negligence actions involve issues of fact and are generally not appropriate for summary judgment. An actionable negligence consists of a duty on the part of an allegedly negligent party to protect the plaintiff from injury, a failure to discharge that duty, and a resulting injury proximately caused by the breach of the duty. To establish an actionable negligence, the plaintiff must show the defendant had a duty to protect the plaintiff from injury. Generally, the existence of a duty is a preliminary question of law for the court to decide. When a duty does not exist, there is no negligence. If determining the existence of a duty depends on resolving factual issues, the facts must be resolved

by the trier of fact. However, issues of fact may become issues of law for the court if reasonable persons could reach only one conclusion from the facts.

*Azure v. Belcourt Pub. Sch. Dist.*, 2004 ND 128, ¶ 9, 681 N.W.2d 816 (citations omitted).

[¶ 26] To prevail on his claim against Mercy Medical Center, David Long must prove the hospital owed a duty to obtain Jane Long's informed consent to the IVP. Generally, a hospital does not have a duty to obtain the informed consent of its patients. *Kershaw v. Reichert*, 445 N.W.2d 16, 18 (N.D.1989). The court explained:

"It is the surgeon, and not the hospital, who has the technical knowledge and training necessary to advise each patient of the risks of the surgery prior to the patient giving his consent. Further, the hospital does not know the patient's medical history, nor the details of the particular surgery to be performed."

*Id.* at 17 (quoting *Krane v. Saint Anthony Hospital Systems*, 738 P.2d 75, 77 (Colo. App.1987)).

[¶ 27] David Long argued Mercy Medical Center voluntarily accepted the duty through its written policies requiring the execution of an appropriate consent for each patient treated at its facilities. Although North Dakota has not specifically addressed this issue, a majority of courts have held a hospital's written informed consent policies do not create a legal duty to obtain patients' informed consent. *E.g., Mele v. Sherman Hosp.*, 838 F.2d 923, 925 (7th Cir.1988); *Porter v. Sisters of St. Mary*, 756 F.2d 669, 673 (8th Cir.1985); *Petriello v. Kalman*, 215 Conn. 377, 576 A.2d 474, 479 (1990); *Wilson v. Lockwood*, 711 S.W.2d 545, 549 (Mo.App.1986); *Bryant v. McCord*, No. 01A01–9801–CV–00046, 1999 WL 10085, at *9, 1999 Tenn.App.LEXIS 26, at *25 (Tenn.Ct.App. Jan. 12, 1999).

[¶ 28] The majority of states hold that a hospital's policy does not obligate it to ensure a patient has given informed consent. *E.g., Mele*, 838 F.2d at 925. It is a directive to doctors to obtain informed consent, not a voluntary undertaking to guarantee each patient is properly informed. *Id.* The Connecticut Supreme Court noted, "It is quite unlikely that the defendant hospital, in adopting its rule requiring a written consent form to be signed, intended to assume a responsibility greater than the law imposed upon it already." *Petriello*, 576 A.2d at 479.

[¶ 29] We agree with this well reasoned analysis and hold that a hospital's voluntary policies on informed consent do not create a legal duty to obtain a patient's informed consent. The duty to obtain informed consent is solely the responsibility of the physician, not the hospital where the procedure is performed. *Bryant*, 1999 WL 10085, at *9, 1999 Tenn.App. LEXIS 26, at *25. Mercy Medical Center did not owe an independent legal duty of care to obtain Jane Long's informed consent. Accordingly, as a matter of law, David Long's claim of negligence against Mercy Medical Center must fail. Because we hold, that as a matter of law, Mercy Medical Center did not owe a duty to David Long, we do not address other issues raised on appeal.

VI

[¶ 30] The district court's summary judgment is affirmed in part, reversed in part, and remanded for further proceedings.

[¶ 31] GERALD W. VANDE WALLE, C.J., NORMAN J. BACKES, S.J., and DALE V. SANDSTROM, JJ., concur.

MARY MUEHLEN MARING, concur in the result.

[¶ 32] The Honorable NORMAN J. BACKES, S.J., sitting in place of KAPSNER, J., disqualified.