[Civ. No. 11806. First Dist., Div. One. Apr. 27, 1942.]

FRANCES E. STOCKTON, Appellant, v. HARRY H. WEEKS, Respondent.

---

*Reporter's note: The Supreme Court granted a hearing in *People* v. *Kelley* on March 27, 1942.

Osborn, Burum & Shortridge for Appellant.

Samuel H. Wagener and Carlson & Collins for Respondent.

MURPHY (E. P.), J. pro tem.—This action was brought in the county of Kern, California, to recover the sum of $10,600 alleged to be the balance due to the lessors under the terms of an oil and gas lease covering property in said county owned by plaintiffs, R. L. Stockton and Frances E. Stockton, husband and wife, the lessors. The action was transferred to Contra Costa County, the residence of the defendant and lessee, Harry H. Weeks. Pending the trial, Mr. Stockton died and his wife was substituted as sole party plaintiff. The lessee filed an answer denying liability for the payments claimed by the lessors and also filed a cross-complaint asking for reformation of the lease in the event it should be construed by the court to bind him to the payment of any further sum. From a judgment of the trial court in favor of the defendant and cross-complainant, the surviving lessor, plaintiff and cross-defendant below, has prosecuted this appeal.

In March, 1938, prior to the execution of the lease in question, the parties had entered into an option under which the respondent was given the right to take a lease for the exploration of oil and gas, for which option respondent paid appellant the sum of $1,000 and later paid an additional $1,000 for an extension thereof. The option provided that the respondent should select at least 1,000 acres and should pay to appellant, as a bonus, the sum of $10 per acre for all acreage selected. The option also provided that the lease should be executed on Form 86-c revised and should have attached to it a rider providing for the payment of this $10 bonus for all acreage selected, less the amount of $2,000 theretofore paid for the option. The option also provided that the payments should be made at the rate of $1,000 every three months from the date of the execution of the lease until the full sum had been paid.

Respondent selected 1,360 acres and the lease in question was executed in June, 1938. As finally executed the lease did not contain a rider using the term "bonus," as provided in the option, but paragraph 31 of the lease does provide for similar payments in quarterly installments and reads as follows:

"It is understood and agreed that $2000.00 has been paid on the above lease, and that there is now due and owing to the Lessors a balance of $11600.00, payable as follows: $1000.00 on August 12, 1938; and $1000.00 on or before each and every three months thereafter until the full amount of $11600.00 has been paid."

In August, 1938, respondent paid the first quarterly payment of $1,000 and thereafter erected a derrick on the land and started drilling operations. On November 8, 1938, he ceased drilling operations and notified appellant that he intended to avail himself of his right to return the property by quitclaim to the possession of the appellant, which right he claimed was given him by paragraph 27 of the lease which provides as follows:

"Lessee may at any time quitclaim this lease in its entirety or as to part of the acreage covered thereby, with the privilege of retaining ten (10) acres surrounding each producing or drilling well, and thereupon Lessee shall be released from all further obligations and duties as to the area so quitclaimed, and all rentals and drilling requirements shall be reduced pro rata. All lands quitclaimed shall remain subject to the easements and rights-of-way hereinabove provided for. Except as so provided, full right to the land so quitclaimed shall revest in Lessor, free and clear of all claims of Lessee, except that Lessor, his successors or assigns, shall not drill any well on the land quitclaimed within three hundred & thirty (330) feet of any producing or drilling well retained by Lessee."

The trial court found that respondent had the right so to quitclaim and entered judgment accordingly, thus rendering unnecessary any finding on the cross-complaint.

Appellant contends that the provision of the lease and option providing for the payment of a bonus of $10 per acre in quarterly payments of $1,000 called for the payment of a cash bonus, in quarterly installments, totalling the aggregate amount prayed for, the obligation to pay which became fixed and final when the lease was executed and, therefore, that respondent did not have the right to avoid this obligation by quitclaiming the property. In support of her position, appel-

lant relies on a number of cases and authorities interpreting the word "bonus" as used in oil and gas leases, to the effect that "bonus" is the consideration for the execution of the oil and gas lease and that it is immaterial whether the bonus is to be paid in installments or in full at the time of execution.

The principal case relied upon by appellant is that of *Elsinore Oil Co.* v. *Signal Oil & Gas Co.*, 3 Cal. App. (2d) 570 [40 P. (2d) 523], but we believe that it is clearly distinguishable from the case at bar. In the Elsinore case the defendant entered into an oil and gas lease under the terms of which he leased from the plaintiff a 40-acre tract of land known as Parcel No. 1. Prior to this the defendant had leased from the plaintiff another tract designated as Parcel No. 2, also for the development of oil and gas. In accordance with the terms of the lease, the defendant lessee agreed "to pay to lessor as a bonus One Hundred Fifty Dollars per acre for the premises above described . . . payable only out of 25 per cent of the proceeds derived from the sale of the oil produced, saved and sold" from Parcel No. 2. A provision was also made for one-sixth royalty payment from the oil produced in Parcel No. 1. The lease also contained a quitclaim provision similar in character to that found in paragraph 27 of the lease involved in the case at bar. The defendant quitclaimed the lease after a period of two months. At the time of the quitclaim, 25 per cent of the sale price of oil from Parcel No. 2 equalled $1,854.99. Thereafter the plaintiff waited until sufficient oil had been produced from Parcel No. 2 and then brought suit for the entire sum of $6,000.

In its opinion in the Elsinore case the court regarded the individual lease as a matter of construction and the decision does not establish any hard and fast rule which can be applied to all oil and gas leases in cases where a monetary consideration is provided in addition to royalty and deferred drilling rentals. The court determined that as to the particular lease the evident intention of the parties was that the consideration for the lease was the entire $6,000. In the case at bar it is apparent that no such evident intention is discernible in the lease and there was an obvious difference in the consideration by reason of the fact that respondent had already paid the sum of $2,000 on the option of the property which was credited on the lease. Furthermore, under the terms of paragraph 31 of the instant lease respondent agreed to pay an additional $1,000 to the appellant for every three months he retained the lease whether any development work was accomplished or not.

In the Elsinore case there was no obligation to pay any sums of money at all even though the lessee retained the lease. In the instant case, however, appellant was certain of getting the money as long as respondent remained in possession. The evidence is that appellant actually collected $3,000 for the option and lease of oil lands which proved to be worthless and that the property was tied up under both option and lease for a total period of nine months.

The other cases relied upon by appellant are likewise distinguishable from the case at bar, but it is not necessary to analyze them because no fixed and unvarying meaning can be applied to the term ''bonus'' without a construction of the particular lease in each case, and in the case at bar, as found by the trial court, paragraph 27 of the agreement clearly gave respondent the right to quitclaim the property at any time without liability for further payments of the quarterly installments.

Not only did the trial court so interpret paragraph 27, but this conclusion is also supported by the testimony. Respondent testified that they had refused to pay the full amount of the cash bonus at one time because they ''wanted an opportunity to find out if the land was worth it'' and a chance to prove whether it was oil or gas land.

We agree with the trial court's interpretation of the lease and there is ample evidence to support its findings and judgment. Accordingly, the judgment is affirmed.

Peters, P. J., and Ward, J., concurred.