2011 ND 22

**IRISH OIL AND GAS, INC.,**
Plaintiff and Appellant

v.

**Gerald C. RIEMER, Doris E. Riemer, Lillie J. Riemer, and Joanne Johnson, Defendants and Appellees.**

No. 20100064.

Supreme Court of North Dakota.

Feb. 8, 2011.

Zachary E. Pelham (argued) and Patrick W. Durick (appeared), Bismarck, ND, for plaintiff and appellant.

Mary E. Nordsven, Dickinson, ND, for defendants and appellees Gerald C. Riemer and Doris E. Riemer.

Jason J. Henderson (argued) and Charles J. Peterson (on brief), Dickinson, ND, for defendant and appellee Lillie J. Riemer.

Dann E. Greenwood, Dickinson, ND, for defendant and appellee Joanne Johnson.

CROTHERS, Justice.

[¶ 1] Irish Oil and Gas, Inc. appeals from the district court judgment dismissing its complaint against Gerald C. Riemer, Doris E. Riemer, Lillie J. Riemer, and Joanne Johnson ("the Riemers") with prejudice. We affirm in part, reverse in part and remand for proceedings consistent with this decision.

I

[¶ 2] In January and February 2008, Irish Oil entered into oil and gas leases with the Riemers for a single parcel of land they owned jointly. A Letter Agreement in Lieu of Draft for Oil and Gas Lease Bonus Consideration accompanied each lease. The pertinent portions of the letter agreement read:

"Irish Oil & Gas, Inc. is interested in acquiring an oil and gas lease on the above referenced mineral interest, which you appear to own mineral interest, and is offering a bonus consideration payment of $160.00 per net mineral acre, for a primary term of five years, and a 1/6th royalty in the event of production. . . .

. . . .

"Within 60 days upon receipt of the signed lease, and subject to approval of title, with right of payment extension of 30 additional days, in the event of title curative issues, from expiration of original 60 days, you will receive a check in the amount of $10,640.00. On January 15, 2009 you will receive the balance of bonus consideration in the amount of $10,640.00."

[¶ 3] Gerald C. Riemer testified during a deposition that he called Irish Oil on March 24, 2008 and spoke with Irish Oil's landman, Clarence Herz. Gerald C. Riemer asked Herz why the first payment described in the letter agreement had not yet arrived. Gerald C. Riemer spoke with Irish Oil's vice president, Tim Furlong, the following day. Furlong sent a letter to Gerald C. Riemer purporting to memorialize Gerald C. Riemer's conversations with

Herz and Furlong. Furlong stated in the letter:

"As mentioned in your conversation with Clarence Herz of yesterday in which you expressed concerns of payment, please accept our apologizes [sic] for the delay. As agreed Irish Oil & Gas intends to pay you and your sisters, subject to title as agreed in our letter agreement executed by you and your sisters. We through the examination of title have encountered title issues, more specifically old mineral reservations that may or may not cover the oil and gas interest. As I told you today we will have to further examine documents and possibly get a legal opinion on the same. This may take as long as the first of June, but if [it] takes longer than June 15th we will contact you to either extend the time to pay or release our leases of record.

"Again, thanks for your patience; if this does not correctly memorialize our conversation please feel free to contact me...."

Gerald C. Riemer testified he did not agree to give Irish Oil additional time to make payment. Furlong asserted in an affidavit that he "obtained Gerald Riemer's agreement for an extension of time to June 15, 2008, to pay the bonus consideration for the Leases."

[¶ 4] On April 30, 2008, Gerald C. Riemer signed an oil and gas lease with Continental Oil Company for the mineral rights that had been leased to Irish Oil. On May 26, 2008, Irish Oil sent Gerald C. and Doris E. Riemer a check for $10,640. The Riemers sent the check back to Irish Oil with a note stating, "Sorry I leased it to another company. Sincerely, Gerald C. Riemer[,] Doris E. Riemer." Lillie J. Riemer also voided a check she received from Irish Oil after May 27, 2008.

[¶ 5] On October 6, 2008, Irish Oil sued the Riemers for breach of the leases. The Riemers answered and counterclaimed for Irish Oil's breach of the leases. On September 1, 2009, Irish Oil moved for leave to amend its complaint. Irish Oil sought to add a claim against Gerald C. Riemer for deceit regarding their purported oral agreement to extend the deadline for payment of the bonus. All parties filed motions for summary judgment.

[¶ 6] On December 17, 2009, the district court issued its memorandum opinion. The district court denied Irish Oil's motion to amend its complaint, stating, "Even though the motion was timely filed, in accordance with the scheduling order, the Court does not find that justice requires that leave to amend the complaint be given. The Court therefore denies the motion."

[¶ 7] Regarding the summary judgment motions, the district court explained, "[T]he first issue to be resolved is whether the alleged extension given by Gerald Riemer on behalf of himself and the other Defendants could be valid." The district court explained further, any modification of the leases had to be in writing: "It is irrelevant whether an oral modification was made, as it would have been without effect." The district court concluded no valid modification of the leases was made and any dispute over the facts related to the modification was irrelevant.

[¶ 8] Next, the district court determined the effect of the late bonus payment. Interpreting that portion of paragraph 16 of the leases requiring judicial determination of a breach and giving a reasonable time to cure the breach before the lease could be terminated, the district court explained, "The Court agrees with the Defendants that the provision is not applicable to the circumstances presented here. The Court bases its interpretation on who drafted it, the language used, the placement and the context of the para-

graph." The district court asserted the remainder of paragraph 16 of the leases dealt with development and implied responsibilities, where a breach can be "difficult to ascertain." The district court explained requiring judicial determination of a breach of an express duty "would be unreasonable and it would waste judicial and other resources." The district court concluded, "The provision therefore does not pertain to the current circumstances."

[¶ 9] Finally, the district court held there was a total failure of consideration. While recognizing that failure of consideration is normally a question of fact, the district court noted, "It is clear and undisputed that Irish [Oil] did not comply with its duty to provide the bonus payments within 90 days." The district court concluded reasoning minds could not differ and the total failure of consideration excused the Riemers from performing. The district court granted the Riemers' motions for summary judgment and issued a judgment dismissing Irish Oil's complaint with prejudice.

[¶ 10] On appeal, Irish Oil argues the district court erred when it concluded Irish Oil's failure to timely make the bonus payments was a total failure of consideration, rather than only a partial failure of consideration. Irish Oil argues further the Riemers did not comply with the leases because they did not seek judicial determination of a breach before cancelling the leases. Finally, Irish Oil argues the district court abused its discretion when it denied Irish Oil's motion to amend its complaint.

II

A

Lease Paragraph 16

[¶ 11] We consider the district court's interpretation of paragraph 16 of the leases. Interpretation of a contract is a question of law, and on appeal this Court independently examines and construes the contract to determine if the district court erred in its interpretation. *Egeland v. Continental Resources, Inc.*, 2000 ND 169, ¶ 10, 616 N.W.2d 861. "A contract must be read and considered in its entirety so that all of its provision are taken into consideration to determine the true intent of the parties." *Id.* "Words in a contract are construed in their ordinary and popular sense." *Id.* "The same general rules that govern interpretation of contractual agreements apply to oil and gas leases." *Id.*

[¶ 12] Paragraph 16 of each of the leases contained the following provision:

"This Lease shall not be terminated, forfeited, or canceled for failure by Lessee to perform in whole or in part any of its *implied covenants, conditions, or stipulations* until it shall have been first finally and judicially determined that the failure or default exists, and then Lessee shall be given a reasonable time to correct any default so determined, or at Lessee's election it may surrender the Lease with the option of reserving under the terms of this Lease each producing well and forty (40) acres surrounding it as selected by Lessee, together with the right of ingress and egress. Lessee shall not be liable in damages for breach of any implied covenant or obligation."

(Emphasis added.) Irish Oil argues the term "implied" only modifies "covenants," but does not apply to "conditions, or stipulations." The Riemers argue "implied" modifies "covenants," "conditions," and "stipulations." The Riemers alleged Irish Oil breached an express provision of the lease; thus, judicial determination of the breach was not necessary. The district court agreed with the Riemers and held

that "the provision is not applicable to the circumstances presented here."

[¶ 13] Courts in multiple jurisdictions over multiple decades have been asked to interpret the phrase "implied covenants, conditions, or stipulations." In some cases, only a breach of an implied covenant was alleged, so the court did not discuss whether "implied" also applied to "conditions" and "stipulations." *See Gillette v. Pepper Tank Co.*, 694 P.2d 369, 372–73 (Colo.Ct.App.1984); *Kuehne v. Samedan Oil Corp.*, 626 P.2d 1035, 1040 (Wyo.1981). Two courts have provided relevant discussions of the phrase. The Supreme Court of Michigan has stated:

"Defendant insists that the lease should not be forfeited or cancelled for failure to perform covenants or stipulations until it had been judicially determined that such a failure existed, and that thereafter defendant should be given a reasonable time to comply with such stipulations. The default, as determined by the trial court, was a failure to perform an express covenant to pay money. We are of the opinion that defendant's contention in this regard is without merit."

*Steffes v. Allen*, 295 Mich. 510, 295 N.W. 245, 246 (1940). The Supreme Court of Tennessee has explained:

"The provision quoted above, and others of similar import, are designed to give lessees relief from the legal effects of these implied covenants in oil and gas leases. We are cited to no authority and our independent research has disclosed none, holding that this provision has any relevance to a default in the obligation to drill or to pay delay rental under specific conditions set forth in the lease.

. . . .

"We conclude that this lease required lessee to drill, to pay delay rental, or to be in production in paying quantities on the 'rental paying date[s],' or the lease terminated by its own terms. Under the facts of this case, the no termination or forfeiture clause has no application to those obligations."

*Waddle v. Lucky Strike Oil Co.*, 551 S.W.2d 323, 327 (Tenn.1977) (alteration in original). Thus, courts that have considered the question have determined the phrase "implied covenants, conditions, or stipulations" does not apply to express provisions of the lease. The district court's conclusion is in line with these courts' reasoning. The district court did not err in its interpretation of the leases.

B

Failure of Consideration

[¶ 14] The Riemers claim as an affirmative defense that Irish Oil's failure to make a timely bonus payment was a total failure of consideration, excusing the Riemers' performance under the leases. Irish Oil argues that consideration for the leases did not fail and that they remain enforceable against the Riemers.

[¶ 15] Oil and gas leases generally are construed like other contracts. This Court has stated:

"The same general rules that govern interpretation of contractual agreements apply to oil and gas leases. The construction of a written contract to determine its legal effect is a question of law for the court to decide, and on appeal, this Court will independently examine and construe the contract to determine if the trial court erred in its interpretation of it. Words in a contract are construed in their ordinary and popular sense, unless used by the parties in a technical sense or given a special meaning by the parties. We also construe contracts in light of existing statutes, which become part of and are read into the contract as if those provisions were

included in it. A contract must be read and considered in its entirety so that all of its provisions are taken into consideration to determine the true intent of the parties."

*Egeland,* 2000 ND 169, ¶ 10, 616 N.W.2d 861 (internal citations omitted); *but see Greenfield v. Thill,* 521 N.W.2d 87, 90 (N.D.1994) (different rule of construction may apply to rights upon cessation of production); *Holman v. State,* 438 N.W.2d 534, 539 (N.D.1989) ("Unless a different intention is clearly indicated, oil and gas leases are not and should not be governed by the law or policy applicable to ordinary landlord and tenant leases."). *See also* 58 C.J.S. *Mines and Minerals* § 283 (2010) ("General rules relating to the construction and operation of contracts and leases apply in construing oil and gas leases and determining the rights and liabilities of the parties thereunder, except to the extent that different applications of such rules or different rules apply by reason of the peculiar nature of the mineral and the terms and conditions of this class of leases.").

[¶ 16] In order for a contract to exist it must be supported by "[s]ufficient cause or consideration." N.D.C.C. § 9–01–02(4). This concept remains true from formation through the existence of the contract. Professor Lord explains:

> "Where no consideration exists, and is required, the lack of consideration results in no contract being formed in the absence of a substitute for consideration such as a writing under seal (where the seal retains vitality) or an estoppel. By contrast, when there is a failure of consideration, there is originally a contract when the agreement is made, but because of some supervening cause, the promised performance fails."

3 Richard A. Lord, *Williston on Contracts* § 7:11 (4th ed.2008) (footnotes omitted).

[¶ 17] The Riemers signed written leases and letter agreements. The letter agreements called for $160.00 per acre bonus payments plus "a 1/6th royalty in the event of production." Neither party asserts insufficient consideration supports the formation of the contract; thus, the issue is whether consideration failed when Irish Oil did not pay the bonus payments when promised.

[¶ 18] "The burden of showing a want of consideration sufficient to support [a contract] lies with the party seeking to invalidate or avoid it." N.D.C.C. § 9–05–11. "Failure of consideration arises when a valid contract has been formed, but the performance bargained for has not been rendered." *Check Control, Inc. v. Shepherd,* 462 N.W.2d 644, 646 (N.D.1990). We have stated, "A failure of consideration may be either partial or total." *Id.*

[¶ 19] Distinguishing between a partial or a total failure of consideration is important because it dictates the remedy. In *Shepherd* we explained:

> "The remedy for a total failure of consideration is to excuse the non-breaching party from performance of its obligations under the agreement . . . . [and][w]here a partial failure of consideration has occurred the proper remedy is to grant appropriate damages to the non-breaching party."

462 N.W.2d at 647 (citations omitted).

[¶ 20] "A total failure of consideration will occur where a party has failed to perform a substantial part of its obligation, so as to defeat the very object of the agreement." *Shepherd,* 462 N.W.2d at 647. On the other hand, a partial failure of consideration occurs "when there has been an insubstantial breach that leaves sufficient consideration for sustaining the contract." *Id.*

[¶ 21] The Riemers assert Irish Oil's failure to timely pay the bonus payments was a total failure of consideration. Irish Oil argues consideration has not failed, even without timely tender of the bonus payment. In particular, Irish Oil argues the primary consideration was the promise of "a 1/6th royalty in the event of production."

[¶ 22] In *Davis v. Meagher Oil & Gas Props., Inc.*, the court held:

"A 'royalty' is considered the compensation or consideration a lessee pays to the lessor to secure the privilege of exercising the right to explore and develop the property for the production of oil and gas. The nature of a 'royalty' allows the lessee to avoid paying the lessor up front for the privilege of exploration, and to defer payment of 'consideration' upon an *eventual* yield accruing from the lessee's production efforts."

No. 08–1638, 2010 WL 819403, at *3 n. 1 (W.D.La. Mar. 4, 2010) (internal citation omitted); *see also Whitham Farms, LLC v. City of Longmont*, 97 P.3d 135, 137 (Colo.Ct.App.2003) ("The primary consideration in [oil and gas] lease transactions is the royalty derived from the development of the resources."); *Cheyenne Mining and Uranium Co. v. Fed. Res. Corp.*, 694 P.2d 65, 74 (Wyo.1985) (explaining that a number of courts have held "a conveyance of a mineral interest in consideration of royalties on production amounts to a lease"); 58 C.J.S. *Mines and Minerals* § 280 (2009) (stating a promise to develop the leased property and pay royalties is sufficient as consideration for an oil and gas lease). Although the leases at issue are "Paid–Up Lease(s)" which provide the lessee has no obligation to commence operations during the primary term of the lease and thus carry no assurance of royalty, we cannot say, as a matter of law, that the potential for royalty is not sufficient consideration to support the lease.

[¶ 23] Generally, determination of whether there has been a failure of consideration is a question of fact. *Shepherd*, 462 N.W.2d at 646–47. "Only when the evidence is such that reasoning minds could draw but one conclusion does the fact question become a question of law for which summary judgment may be appropriate." *Long v. Jaszczak*, 2004 ND 194, ¶ 17, 688 N.W.2d 173 (quoting *Schmidt v. First Nat'l Bank and Trust Co.*, 453 N.W.2d 602, 605 (N.D.1990)). Here the district court concluded that "[r]easoning minds would not differ" and that Irish Oil's failure to timely make the bonus payment was a total failure of consideration, as a matter of law.

[¶ 24] We recognize a bonus payment generally is an important part of the consideration supporting leasing of the premises. However, we cannot conclude as a matter of law that Irish Oil's failure to timely pay the bonus leaves the leases with a total failure of consideration that excuses the Riemers' performance. To do so would require a conclusion that the remaining consideration is, as a matter of law, insubstantial and unimportant to the contract.

[¶ 25] We cannot conclude as a matter of law that the possibility of future production and future royalties is so speculative as to provide no consideration supporting the existence of a fact issue on the question of failure of consideration. We note that, in the context of breach of an obligation to pay royalties, the legislature has provided: "The obligation arising under an oil and gas lease to pay oil or gas royalties to the mineral owner . . . is of the essence in the lease contract, and breach of the obligation may constitute grounds for the cancellation of the lease in cases where it is determined by the court that the equi-

ties of the case require cancellation." N.D.C.C. § 47–16–39.1. This public policy statement suggests that the possibility of future royalties is, or at least might be in a given case, an important component of the oil and gas lease. The relative importance of the royalty clause to the Riemers cannot be ascertained from the written document. A fact issue therefore exists, requiring remand for further proceedings in the district court.

[¶ 26] Finally, the uncertainty of the Riemers ever receiving a one-sixth production royalty does not, as a matter of law, prevent that royalty from being enough consideration to avoid a total failure of consideration. The legislature has distinguished between currently paid consideration and consideration paid in the future. "A consideration may be executed or executory in whole or in part." N.D.C.C. § 9–05–05. "When a consideration is executory, it is not indispensable that the contract should specify its amount or the means of ascertaining it. It may be left to the decision of a third person or regulated by any specified standard." N.D.C.C. § 9–05–06. Here, the bonus payment is "executed consideration." The production royalty appears to be "executory consideration." Both forms of consideration can support the contract. N.D.C.C. §§ 9–05–01, 9–05–05. Because both executed and executory consideration can support a contract, the district court erred by concluding that the production royalty failed as a matter of law to support the leases in this case.

C

Motion to Amend Complaint

[¶ 27] Irish Oil claims the district court erred when it denied Irish Oil's motion to amend its complaint to add a claim for deceit. Rule 15(a), N.D.R.Civ.P., states, in pertinent part:

"A party's pleading may be amended once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, the party may so amend it at any time within 20 days after it is served. Otherwise a party's pleading may be amended only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires."

This Court reviews a district court's denial of a motion to amend a complaint under an abuse of discretion standard. *Ritter, Laber & Assocs., Inc. v. Koch Oil, Inc.*, 2004 ND 117, ¶ 34, 680 N.W.2d 634. "A trial court abuses its discretion when it acts arbitrarily, unconscionably, or unreasonably, or when its decision is not the product of a rational mental process leading to a reasoned determination." *Id.* "A district court does not abuse its discretion when it denies a requested amendment which would be futile." *Bernabucci v. Huber*, 2006 ND 71, ¶ 30, 712 N.W.2d 323.

[¶ 28] Deceit is a tort claim available when a party has breached an obligation imposed by law to honestly deal with another party. *See Erickson v. Brown*, 2008 ND 57, ¶ 66, 747 N.W.2d 34 (Crothers, J., concurring in part and dissenting in part); N.D.C.C. ch. 9–10. By comparison, fraud is a claim available to a contracting party seeking rescission due to ineffective consent. *Erickson*, at ¶ 62; N.D.C.C. chs. 9–01, 9–03 and 9–09.

[¶ 29] In *Sonnesyn v. Akin*, this Court explained:

"If one is actually defrauded by a false statement which induced him to enter into a contract, he has his remedy for the injury. The contract thus procured is not void, but voidable. He may either

rescind the contract and recover any sums paid upon it or property delivered pursuant to it, or he may affirm the contract, take such benefits as are obtainable under it, and recover damages for the injuries sustained by reason of the false statement. These alternative remedies, it will be seen, are inconsistent, and are not available in the same action; for one is based upon a rescission of the contract and the other upon an affirmance of it—one upon a contract implied by law obligating the wrongdoer to restore whatever of value he has received; the other in tort for damages for the injury done by the false statement. When the person injured elects the latter remedy, i.e., to sue for the tort, he affirms the contract, thus continuing it as a binding obligation. And 'it is the rule that the defrauded party to a contract has but one election to rescind, that he must exercise that election with reasonable promptitude after the discovery of the fraud, and that, when he once elects, he must abide by his decision.' " 14 N.D. 248, 256–57, 104 N.W. 1026, 1029 (1905) (citations and quotation omitted).

[¶ 30] We were reminded nearly a century ago, "This is an action for deceit, not for rescission. There is a vast difference between the actions, and this difference must be constantly kept in mind in considering this case." *Gunderson v. Havana–Clyde Mining Co.*, 22 N.D. 329, 332, 133 N.W. 554, 555 (1911).

[¶ 31] Here, Irish Oil seeks to add a deceit claim to its complaint alleging:

"Gerald Riemer had no intention of honoring his oral commitment to modify the terms of the Bonus Agreement with respect to extending the date for the first payment until June 15, 2008 and Plaintiff had no means of discovering the fact that Gerald Riemer was concealing his true intention that he did not intend to honor his commitment to modify the terms of the Bonus Agreement."

"Defendant Gerald Riemer intended for Plaintiff to rely on his fraudulent misrepresentation that he would extend the date for the first payment on the leases until June 15, 2008, so that he could lease his minerals and those of Joanne Johnson and Lillie J. Riemer to another company for a higher bonus payment."

"If Irish's letter to defendant Gerald Riemer dated March 25, 2008, did not correctly set out the terms of an oral modification of the Bonus Agreement, defendant Gerald Riemer was under a duty to advise Irish of that fact as requested in the letter."

[¶ 32] The district court held, "Even though the motion was timely filed, in accordance with the scheduling order, the Court does not find that justice requires that leave to amend the complaint be given." Gerald C. and Doris E. Riemer argue Irish Oil's proposed amendment would have been futile because deceit does not apply to this situation, as Irish Oil and Gerald C. Riemer were parties to a contract. Irish Oil argues the amendment would not be futile because Gerald C. Riemer's alleged agreement to extend the time for Irish Oil to make the bonus payments was an extra-contractual statement that Irish Oil relied on to its detriment.

[¶ 33] The statute of frauds prevented Gerald C. Riemer's oral promise from being a new contract, and the lack of execution made modification of the existing contract ineffective. Thus, no contractually related misrepresentation claim (fraud) is available to Irish Oil. The remaining question is whether Irish Oil can maintain a tort claim (deceit) against the Riemers when contract law makes the underlying promise unenforceable.

[¶ 34] We review the grant of or the denial of motions to amend complaints under the abuse of discretion standard. *White v. Altru Health System*, 2008 ND 48, ¶ 7, 746 N.W.2d 173. "A district court abuses it[s] discretion when it acts arbitrarily, unconscionably, or unreasonably, or when its decision is not the product of a rational mental process leading to a reasoned determination. A district court does not abuse its discretion in denying a motion to amend the complaint when such an amendment would be a futile act." *Darby v. Swenson Inc.*, 2009 ND 103, ¶ 12, 767 N.W.2d 147 (citation omitted).

[¶ 35] In *Darby*, this Court also considered, but did not expressly adopt, two tests for determining whether amendment would be futile. 2009 ND 103, ¶¶ 12, 13, 767 N.W.2d 147. The first test states:

> "[An] amendment is not deemed futile as long as the proposed amended complaint sets forth a general scenario which, if proven, would entitle the plaintiff to relief against the defendant on some cognizable theory. If, however, leave to amend is not sought until after discovery has closed and a summary judgment motion has been docketed, the proposed amendment must be not only theoretically viable but also solidly grounded in the record. In that type of situation, an amendment is properly classified as futile unless the allegations of the proposed amended complaint are supported by substantial evidence."

*Id.* at ¶ 12 (quoting *Hatch v. Dep't for Children, Youth and Their Families*, 274 F.3d 12, 19 (1st Cir.2001)). "Other courts have explained that an amendment is futile for purposes of determining whether leave to amend should be granted, if the added claim would not survive a motion for summary judgment." *Darby*, at ¶ 13.

[¶ 36] Under North Dakota statute, deceit is:

> "1. The suggestion as a fact of that which is not true by one who does not believe it to be true;
>
> "2. The assertion as a fact of that which is not true by one who has no reasonable ground for believing it to be true;
>
> "3. The suppression of a fact by one who is bound to disclose it, or who gives information of other facts which are likely to mislead for want of communication of that fact; or
>
> "4. A promise made without any intention of performing."

N.D.C.C. § 9–10–02.

[¶ 37] Irish Oil alleges, "Gerald Riemer had no intention of honoring his oral commitment to modify the terms of the Bonus Agreement with respect to extending the date for the first payment until June 15, 2008." It also alleges, "Gerald Riemer intended for Plaintiff to rely on his fraudulent misrepresentation that he would extend the date for the first payment on the leases until June 15, 2008, so that he could lease his minerals and those of Joanne Johnson and Lillie J. Riemer to another company for a higher bonus payment." Both of these allegations appear to state a claim for relief under N.D.C.C. § 9–10–02(4) that "[a] promise [was] made without any intention of performing." Both of these allegations also appear to have factual support in the record in that a conversation between Irish Oil's agents and Gerald C. Riemer did occur and that the parties discussed an extension of time for Irish Oil to pay the bonus payment. Therefore, in view of the discussion starting in paragraph 39 below on the statute of frauds, this portion of the deceit claim was not futile on its face.

[¶ 38] Irish Oil makes a third allegation of deceit by claiming Gerald C. Riemer had a duty to respond to its letter confirm-

ing terms of the alleged oral modification of the Bonus Agreement. We have held a party cannot claim another was estopped from asserting defenses, or waived defenses, by not responding to correspondence unilaterally attempting to create a duty. *First Int'l Bank & Trust v. Peterson,* 2009 ND 207, ¶¶ 13–16, 776 N.W.2d 543. So too here, Irish Oil's letter did not and could not unilaterally impose a duty on the Riemers to respond. The failure to respond to a letter where no duty exists to do so cannot be the basis of a deceit claim. Therefore, this portion of the amendment is futile.

[¶ 39] Turning to the statute of frauds, the issue apparently is one of first impression in North Dakota and one of diverse treatment elsewhere. Jurisdictions considering the question have split, with the most persuasive concluding that the statute of frauds preventing a breach of contract claim does not also bar a deceit claim.

[¶ 40] In 1936, the American Law Reports legal encyclopedia posited the question, "If one makes an oral promise which is void under the Statute of Frauds, may an action for deceit be predicated thereon?" Annotation, *Action for Fraud or Deceit Predicated Upon Oral Contract Within the Statute of Frauds or the Transaction of Which the Oral Contract was a Part,* 104 A.L.R. 1420 (1936). The editors responded to their question by noting:

"It has been stated that the mere refusal to perform such oral promise is not of itself a fraud for which an action will lie.
"However, if the oral agreement which is void under the Statute of Frauds is made with the intent not to perform, a different question arises. According to the weight of authority, fraud may be predicated on promises made with an intention not to perform the same. It will be observed from these annotations

that the Oregon decisions are in accord with the weight of authority on the question indicated. And, assuming that fraud may be predicated on an oral promise made with the intention at the time not to perform, the decision of the Oregon court in *Burgdorfer v. Thielemann* [153 Or. 354, 55 P.2d 1122 (1936),] that the fact that the oral promise is unenforceable under the Statute of Frauds does not preclude the showing of the promise in an action for deceit, seems logical and finds support in several other cases."

*Id.* at 1420–21 (internal citations omitted).

[¶ 41] The split of authority continued after 1936, with a number of decisions indicating an action brought upon an oral promise should be considered "an action brought upon ... an unenforceable contract, rather than a maintainable one in tort for deceit, where the damages claimed showed that in its essence the action was attempted to be premised upon breach of the promise falling within the statute [of frauds]." 37 Am.Jur.2d *Fraud and Deceit* § 95 (2001) (footnote omitted); *see, e.g., Classic Cheesecake Co. v. JPMorgan Chase Bank,* 546 F.3d 839, 841 (7th Cir. 2008) (stating with reference to the statute of frauds that "[c]ourts resist efforts by a plaintiff to get around limitations imposed by contract law by recasting a breach as a tort"); *Fericks v. Lucy Ann Soffe Trust,* 100 P.3d 1200, 1204–05 (Utah 2004) (disallowing plaintiffs to pursue an action for deceit in tort where the tort damages claimed by plaintiffs directly coincided with the damages for a breach of contract claim and where plaintiffs' action was really one for a breach of contract disguised as a tort claim); *Mark Andrew of Palm Beaches, Ltd. v. GMAC Commercial Mortgage Corp.,* 265 F.Supp.2d 366, 382 (S.D.N.Y.2003) (stating that the statute of frauds bars actions, such as an action in

tort for deceit, that seek to indirectly enforce oral contracts); *Hurwitz v. Bocian,* 41 Mass.App.Ct. 365, 670 N.E.2d 408, 412 (1996) (explaining that some jurisdictions adhere to the general proposition that the statute of frauds may bar an action in tort "where an essential element of that action is an oral contract within the comprehension of the statute").

[¶ 42] Other jurisdictions follow the principle that an oral promise unenforceable under the statute of frauds can be used to support an action for deceit. The 1936 ALR Report specifically referenced the decision in *Burgdorfer v. Thielemann,* 153 Or. 354, 55 P.2d 1122 (1936). There, the plaintiff claimed that the defendant misrepresented facts about and value of certain real estate, and that defendant knew the representations were false when made. *Id.* at 1123–24. The question before the Oregon Supreme Court was whether testimony inadmissible under the statute of frauds could be used to prove terms of a contract to establish a deceit claim arising out of the same circumstances. *Id.* at 1125–26. The court reviewed case law from a number of jurisdictions and from England and ultimately concluded, "No error was committed by allowing plaintiff to testify as to defendant's alleged [deceit]." *Id.* at 1128.

[¶ 43] More recently, in *Munson v. Raudonis,* "[t]he plaintiff argue[d] that false representations in connection with a contract are generally not required to be in writing in order to sustain an action in deceit." 118 N.H. 474, 387 A.2d 1174, 1176 (1978). The defendant "claims that mere refusal to carry out an oral promise to convey land is neither fraud nor other ground for relief, and that therefore the plaintiff is attempting to enforce an oral agreement … which is unenforceable because of the Statute of Frauds." *Id.* The New Hampshire Supreme Court started

its analysis by noting, "It is undisputed that an oral contract to leave real estate by will is unenforceable under the Statute of Frauds." *Id.* But this conclusion does not answer "whether an action in deceit can be maintained when the actual promise that was breached cannot be enforced due to the Statute of Frauds." *Id.* The court answered the question, holding:

"The argument is that to allow the deceit action is 'to circumvent the statute of frauds through a "northwest passage"….' [1 Harper and James, *The Law of Torts* § 7.10 at 573 (1956)]. Barring an action in deceit because of the Statute of Frauds, however, would not further the policy of the statute. Quite the contrary, it would foster an injustice. '[I]t does not follow that in a case where the promisor was being dishonest at the time the contract was made, he should be permitted to hide behind the Statute of Frauds, or use the Statute of Frauds itself as a means of perpetrating a fraud.' Keeton, *Fraud–Statements of Intention,* 15 Texas L.Rev. 185, 201 (1937).

"We see no reason to apply the bar of the Statute of Frauds to this action in deceit. We have previously held that a false statement of one's intent to perform an oral promise required to be in writing by the Statute of Frauds is actionable. *Morgan v. Morgan,* 94 N.H. 116, 47 A.2d 569 (1946). The *Morgan* case involved equitable relief rather than a suit at law for damages. Although there appears to be authority for allowing equitable relief in a case such as this but denying recovery in an action at law in deceit (Harper and James, *supra* at 573; Keeton, *supra* at 216–20), we perceive no reason for distinguishing between the remedies. To allow equitable relief but to deny damages for deceit would be to

create a distinction without a substantive difference."

*Munson,* 387 A.2d at 1176–77.

[¶ 44] Similarly, the Rhode Island Supreme Court concluded in *Bourdon's, Inc. v. Ecin Indus., Inc.* that the invalidity of a contract because of the statute of frauds did not preclude assertion of a deceit claim. 704 A.2d 747, 749 (R.I.1997). There, a seller sued for breach of contract for purchase of a corporation. *Id.* Defendant counterclaimed for "fraud and/or deceit," which the court described in its decision as "the counterclaim for fraud." *Id.* at 750. The "plaintiff maintained that '[t]he jury had an obligation to determine whether the alleged oral agreements [defendants] asserted as defenses to [plaintiff's] claim and as an independent action in their counterclaim were enforceable, in light of the statute of frauds.'" *Id.* at 755. The court stated:

"Properly construed, the question before this Court is whether the Statute of Frauds precluded defendants from offering proof of alleged oral representations by plaintiff to substantiate their counterclaim for fraud, or whether the trial justice was correct in his reasoning that the jury should not be charged on the Statute of Frauds because the charge '[wasn't] applicable under the circumstances and the evidence.'"

*Id.* (footnote omitted) (emphasis omitted).

[¶ 45] The Rhode Island Supreme Court then concluded the statute of frauds did not preclude assertion of the plaintiff's fraud claim, writing:

"In the instant case, as noted *ante,* plaintiff disavowed making any oral representations; it was defendants' counterclaim for fraud in the inducement of the contract that was presented to the jury and answered by an interrogatory in the verdict form. The defendants' affirmative defense of breach of contract was never placed before the jury. Because proof of plaintiff's alleged oral representations was relevant to the counterclaim, we hold explicitly for the first time that [R.I. Gen. Laws] § 9–1–4 is inapplicable to a claim of misrepresentation, fraud, and/or deceit, and thus overrule *Barry v. Wixon* [, 22 R.I. 16, 46 A. 42 (1900) ] to the extent that it holds to the contrary. It is our opinion that invoking the Statute of Frauds in cases like the one at bar would exploit the statute as an engine of fraud and would 'sanction rather than … prevent an injustice,' *Peacock Realty Co.* [*v. E. Thomas Crandall Farm, Inc.,* 108 R.I. 593, 602, 278 A.2d 405, 410 (1971) ]. Accordingly, we conclude that the trial justice's refusal to charge the jury on the Statute of Frauds was not error."

*Bourdon's, Inc.,* 704 A.2d at 757.

[¶ 46] In *LaBarre v. Shepard,* 84 F.3d 496, 497 (1st Cir.1996), the defendants had instituted foreclosure proceedings against the plaintiffs. Plaintiffs claimed that, prior to foreclosure, the parties' attorneys had orally agreed that plaintiffs would deliver a deed in lieu of foreclosure and defendants would credit $150,000 toward any mortgage deficiencies. *Id.* at 498. The defendants denied any such agreement was reached. *Id.* Plaintiffs sued under several theories, including fraud. *Id.* The defendants moved in limine to exclude all evidence of the alleged oral agreement to accept a deed in lieu of foreclosure, relying on New Hampshire's Statute of Frauds. *Id.* The trial court denied the motion based on New Hampshire law, concluding the statute of frauds did not apply to oral settlement agreements between attorneys. *Id.* The jury, answering special interrogatories, returned a verdict for the plaintiffs, and the defendants argued on appeal that the trial court erred by allow-

ing evidence of the alleged oral agreement. *Id.* at 498–99.

[¶ 47] The court in *LaBarre* affirmed admission of the evidence, but not on the basis relied upon by the district court. 84 F.3d at 500. The First Circuit ruled that the evidence was properly admissible not as an exception to the statute of frauds but, rather, on the inapplicability of the statute of frauds. The court stated:

"[T]he parties miss the real issue and misunderstand the operation of the Statutes of Frauds.

"There is no need here to decide the existence, scope, or applicability of the asserted common-law exceptions to the Statute of Frauds (the so-called 'oral settlement agreement between attorneys' [sic] exception and the part-performance exception). We hold instead that, under New Hampshire law, the Statute of Frauds is only a bar to the enforcement of certain oral contracts; it is not a rule of evidence. Evidence of the oral agreement in this case was relevant to the counts alleging improper foreclosure, misrepresentation, fraud, and unfair trade practice. . . .

. . . .

"Because the evidence of the alleged oral agreement was admissible for purposes other than enforcing that agreement, i.e., to prove the four non-contract counts, and because the breach of contract count did not affect the judgment, there is no reversible error."

*LaBarre*, at 500–01. *See also Brown v. Founders Bank and Trust Co.*, 890 P.2d 855, 863 (Okla.1994) ("Generally, a statute of fraud does not abolish the common law remedy for fraud merely because the fraudulent misrepresentation is not in writing.") (footnote omitted).

[¶ 48] The statute of frauds is a rule of evidence and not one of substantive law. *See Harriott v. Tronvold*, 671 N.W.2d 417, 422 (Iowa 2003) ("This statute [of frauds] does not render the oral promises mentioned invalid. Rather, the statute merely renders incompetent oral proof of such promises. For this reason, the statute is a rule of evidence and not of substantive law."). The statute of frauds is a personal defense, properly invoked by parties to the purported contract or their representatives. *See Ugland v. Farmers' & Merchs.' State Bank*, 23 N.D. 536, 137 N.W. 572 (1912).

[¶ 49] By contrast, Irish Oil's deceit claim sounds in tort and seeks damages from Gerald C. Riemer due to his alleged oral promise to extend Irish Oil's deadline for payment of the bonus. The substance of Irish Oil's deceit claim is that the assertions or promises were not true when made by Gerald C. Riemer. *See* N.D.C.C. § 9–10–02. The result is that a deceit claim cannot be used to revive a purported contract rendered invalid by the statute of frauds, nor can deceit result in a remedy of performance under the contract or a quasi-contract. A viable deceit claim will not exist where the defendant intended to perform at the time the promise or the assertion was made but the defendant subsequently changed his mind. *Id.* Rather, deceit is focused on the actor's intent when the assertion or the promise was made. *Id.*

[¶ 50] We note that the *Restatements Second of Torts and of Contracts* support the position that the statute of frauds cannot be used as a defense in a tort action for deceit, even when the statute serves as a valid defense to a breach of contract action. Specifically, the *Restatement Second of Torts* provides:

"Since a promise necessarily carries with it the implied assertion of an intention to perform it follows that a promise made without such an intention is fraud-

ulent and actionable in deceit.... This is true whether or not the promise is enforceable as a contract.... If the agreement is not enforceable as a contract, as when it is without consideration, the recipient still has, as his only remedy, the action in deceit.... The same is true when the agreement is oral and made unenforceable by the statute of frauds."

*Restatement (Second) of Torts* § 530, cmt. (c) (1977). The *Restatement Second of Contracts* further supports the position that the statute of frauds does not prevent a plaintiff from pursuing a deceit claim based on an otherwise unenforceable oral agreement. Section 143 states that "[t]he Statute of Frauds does not make an unenforceable contract inadmissible in evidence for any purpose other than its enforcement in violation of the Statute." *Restatement (Second) of Contracts* § 143 (1981).

[¶ 51] We conclude that, because the statute of frauds is a rule of evidence giving rise to a defense in a contract action, and because this action is not on the contract, Gerald C. Riemer's alleged statements to Irish Oil's representatives can be offered to support a deceit claim. We would reverse, concluding the district court abused its discretion by misapplying the law when denying amendment of the complaint due to futility.

### III

[¶ 52] We affirm in part, reverse in part and remand for further proceedings.

[¶ 53] MARY MUEHLEN MARING, J., concurs.

VANDE WALLE, Chief Justice, concurring and dissenting.

[¶ 54] I agree with Part II A of the majority opinion concluding the district court correctly interpreted the lease. I respectfully dissent to Part II B, concluding there was no failure of consideration as a matter of law, and to Part II C, concluding an action in deceit lies to defeat the statute of frauds. I would affirm the judgment of the trial court dismissing Irish Oil and Gas, Inc.'s action against the Riemers and Johnson.

### I.

[¶ 55] I conclude Irish's failure to make a timely bonus payment was a total failure of consideration. "Failure of consideration arises when a valid contract has been formed, but the performance bargained for has not been rendered." *Check Control, Inc. v. Shepherd,* 462 N.W.2d 644, 646 (N.D.1990) (citing *First Nat'l Bank of Belfield v. Burich,* 367 N.W.2d 148, 152 (N.D. 1985)). We explained further in *Shepherd:*

A failure of consideration may be either partial or total. *Burich,* 367 N.W.2d at 152; *Schaff v. Kennelly,* 61 N.W.2d 538, 544 (N.D.1953). A total failure of consideration will occur where a party has failed to perform a substantial part of its obligation, so as to defeat the very object of the agreement. *Burich,* 367 N.W.2d at 153; *Lawrence v. Lawrence,* 217 N.W.2d 792, 796 (N.D. 1974); *Schaff,* 61 N.W.2d at 544. The remedy for a total failure of consideration is to excuse the non-breaching party from performance of its obligations under the agreement. *Burich,* 367 N.W.2d at 153. A partial failure of consideration occurs when there has been an insubstantial breach that leaves sufficient consideration for sustaining the contract. *Id.* (citing *Empire Gas Corp. v. Small's LP Gas Co.,* 637 S.W.2d 239 (Mo.App.1982)). Where a partial failure of consideration has occurred the proper remedy is to grant appropriate damages to the non-breaching party. *Id.* (citing *Ralston Purina Co. v. Jungers,* 86 S.D. 583, 199 N.W.2d 600 (1972)).

*Id.* at 647. Generally, determination of whether there has been a failure of consideration is a question of fact. *Id.* at 646–47 (citing *Burich,* 367 N.W.2d at 153). "Only when the evidence is such that reasoning minds could draw but one conclusion does the fact question become a question of law for which summary judgment may be appropriate." *Long v. Jaszczak,* 2004 ND 194, ¶ 17, 688 N.W.2d 173 (quoting *Schmidt v. First Nat'l Bank and Trust Co.,* 453 N.W.2d 602, 605 (N.D.1990)). Here the district court concluded "[r]easoning minds would not differ" and Irish's failure to timely make the bonus payment was a total failure of consideration, as a matter of law.

[¶ 56] Irish argues sufficient consideration supported the lease, even without the bonus payment. In particular, Irish argues the primary consideration was the promise of "a 1/6th royalty in the event of production." In addition, each lessor received a ten dollar payment as consideration.

[¶ 57] A "bonus," as used in oil and gas leases, is defined as follows:

> The cash bonus, which represents the market value of a lease apart from any royalties to be paid on production and any other considerations of the lease, is a sum of money paid to the lessor on the execution of the lease, or agreed to be paid at some later date, traditionally out of the lessee's share of the first oil produced from the land. A cash bonus is often based on a dollar amount per acre leased.

3A Nancy Saint–Paul, ed., *Summers Oil and Gas* § 30:1 (3d ed.2008). The Court of Appeals of Texas has described a bonus as "the amount the lessees were willing to pay for the lease, in the way of a lump sum, over and above the usual nominal amount where the land is not in proximity to a proven field." *Andrews v. Brown,* 283 S.W. 288, 292 (Tex.Civ.App.1926).

[¶ 58] In *Andrews,* the court considered whether the bonus belonged to the owner of a life estate in the mineral interest, or the owners of the remainder. *Id.* at 293. The court held:

> We are unable to resist the conclusion that the bonus constituted a part, and a very substantial part, of the consideration for the entire title to the minerals conveyed by the lease; that it constituted a part of the proceeds of the corpus of the estate; and that its ownership was in the life tenant and remaindermen in the same respective interests as their ownership in the minerals before the lease was executed.

*Id.* at 293. The California Court of Appeal's opinion in *Elsinore Oil Co. v. Signal Oil & Gas Co.* shows the importance of the bonus to the lessor, "It was the evident intention of the parties that the real inducement to respondent to permit appellant to have the property under the lease was not the nominal sum of ten dollars recited as consideration in the lease, but the other more substantial 'bonus' for which judgment was recovered." *Elsinore Oil Co. v. Signal Oil & Gas Co.,* 3 Cal. App.2d 570, 40 P.2d 523, 523–24 (1935); *but see Stockton v. Weeks,* 51 Cal.App.2d 447, 125 P.2d 110, 112 (1942) (explaining a similar intention that the bonus was the real inducement was not evident in the lease).

[¶ 59] Here, the $160 per acre bonus and the $10 payment were the only consideration the Riemers were guaranteed to receive under the leases. The 1/6th royalty, cited by Irish as the primary consideration for the leases, was speculative. It would only materialize if Irish chose to drill, which it was not required to do according to the lease, and then only if the

wells produced. Paragraph 2 of each of the leases states:

> This is a PAID–UP LEASE. In consideration of the cash payment, (which payment is accepted by Lessor as good and sufficient consideration for the rights granted to Lessee in this Lease), *Lessor agrees that Lessee shall not be obligated, except as otherwise provided, to commence or continue any operations during the Primary Term.* Lessee may at any time or times during or after the Primary Term surrender this Lease as to all or any portion of the land and as to any strata or stratum by delivering to Lessor or by filing for record a release or releases, and be relieved of all obligation accruing as to the acreage surrendered.

(Emphasis added).

[¶ 60] It cannot be said that the failure to timely make the bonus payment was an insubstantial breach when the royalty was merely speculative. The bonus was part of the "other valuable consideration" described in the lease and was also "a very substantial part" of the consideration for the leases. *Andrews,* 283 S.W. at 293. When Irish failed to timely make the bonus payments it failed to perform a substantial part of its obligation, defeating the very purpose of the agreements. The district court was correct when it asserted reasoning minds would not differ. Thus, the district court did not err when it held that, as a matter of law, there was a total failure of consideration. *Shepherd,* 462 N.W.2d at 647 (citing *Burich,* 367 N.W.2d at 153; *Lawrence,* 217 N.W.2d at 796; *Schaff,* 61 N.W.2d at 544).

[¶ 61] I have grave concern that the majority opinion will allow speculators to secure a lease with a promise to pay a bonus, attempt to sell the lease to an operator and, if that doesn't succeed, perhaps because development on surrounding property has devalued the speculative worth of the minerals, simply refuse to pay within the prescribed time contending that the real consideration is the oil royalty promised in the lease if a well on the lease is productive. Of course, the lessor may pursue the procedure in N.D.C.C. § 47–16–36 to have the lease terminated or forfeited, or hire an attorney to file suit to determine whether or not the failure to pay the bonus at the onset as required by the lease constitutes a total failure of consideration, or pursue the remedies in N.D.C.C. § 47–16–37, including the munificent sum of $100 in damages and "any additional damages that the evidence in the case will warrant." It remains to be determined whether the latter provision will allow the recovery of the destruction of the value of the mineral estate proven worthless while the lessee holds a lease for which the lessee has not paid the agreed-upon bonus.

[¶ 62] I am concerned the majority opinion could even open the door to allow a lessee to actually drill a well without paying the bonus and, if a producing well is drilled, pay the bonus or, in the case of a dry hole, refuse to pay the bonus, leaving the lessor to pursue the statutory remedies while holding a property proven worthless for production and thus no speculative value to market.

[¶ 63] Perhaps it is recent success of oil exploration in North Dakota that has dimmed the memory of those years when the number of dry holes drilled significantly outpaced the number of successful wells. Nevertheless, I doubt that all wells drilled today are successful and result in oil royalties paid to the lessor. The majority opinion is a disservice to those lessors who may have their mineral estate found worthless and receive no bonus.

[¶ 64] But, in light of N.D.C.C. § 47–16–39.1, the majority may be justified in its position that the failure to pay the

substantial bonus is not a total failure of consideration. Section 47–16–39.1 makes the obligation in a lease to pay oil and gas royalties to the mineral owner "the essence in the lease contract." I have found no such statutory provision regarding the payment of the bonus, perhaps because it is the bonus which is the lure, the consideration for the lessor to enter into the lease, and the Legislature assumed that would necessarily be paid or the lease would be ineffective. If so, the majority opinion clearly negates that assumption.

## II.

[¶ 65] The majority opinion discusses the split in authority on the issue of whether the statute of frauds preventing a breach of contract claim also bars a deceit claim. While the majority opinion finds the most persuasive authority that which concludes the deceit claim is not barred by the statute of frauds, I am particularly concerned about the use of a deceit claim to defeat the statute of frauds with regard to written instruments involving the title to real property. I would not import that cause of action into our jurisprudence without further legislative consideration.

[¶ 66] I would affirm the judgment of the district court.

[¶ 67] DALE V. SANDSTROM, J., concurs.

KAPSNER, Justice, concurring and dissenting.

[¶ 68] I join in Parts IIA and B of the majority opinion.

[¶ 69] I respectfully dissent from Part IIC.

[¶ 70] Irish Oil alleges that during a phone conversation between its representative and Gerald Riemer, Riemer agreed to extend the date for the first bonus payment on the leases. The amended complaint alleges:

> Defendant Gerald Riemer intended for Plaintiff to rely on his fraudulent misrepresentation that he would extend the date for the first payment on the leases until June 15, 2008, so that he could lease his minerals and those of Joanne Johnson and Lillie J. Riemer to another company for a higher bonus payment.

[¶ 71] The proposed amended complaint asserted damages for the loss of the right to explore, capture and produce to market any oil, gas and other hydrocarbons under the leases, as well as the right to assign those rights under the leases. The proposed amended complaint also sought specific performance of the leases.

[¶ 72] This proposed action for deceit is an end-run around the statute of frauds.

[¶ 73] Section 9–06–04(3) directs:

> *9–06–04. Contracts invalid unless in writing—Statute of frauds.* The following contracts are invalid, unless the same or some note or memorandum thereof is in writing and subscribed by the party to be charged, or by the party's agent:
>
> . . . .
>
> 3. An agreement for the leasing for a longer period than one year, or for the sale, of real property, or of an interest therein. Such agreement, if made by an agent of the party sought to be charged, is invalid unless the authority of the agent is in writing subscribed by the party sought to be charged.

[¶ 74] There is nothing to establish Gerald Riemer's authority to act on behalf of his sisters, and a telephone conversation is insufficient to modify written contracts under N.D.C.C. § 9–09–06.

[¶ 75] Irish Oil is a sophisticated dealer in mineral leases. It is, or should be, fully aware of the constraints of the statute of

frauds. It had the simple, expedient solution of getting a written modification of the leases signed by the parties to the leases. In the absence of any evidence of compliance with the statute of frauds, the trial court was correct that justice did not require amendment to the complaint for purposes of seeking such relief. I would affirm the trial court's denial of the motion to amend.

[¶ 76] Carol Ronning Kapsner